**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John B. MILAM, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony J. PIRAINO, Jr., Defendant-Appellant.**

Nos. 86–5634(L), 86–5642.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1987.

Decided May 7, 1987.

Jonathan Scott Smith, Ellicott City, Md., for defendant-appellant John B. Milam.

Charles Lamasa, Baltimore, Md., for defendant-appellant Anthony J. Piraino.

Susan M. Ringler, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and YOUNG, District Judge for the District of Maryland, sitting by designation.

PER CURIAM:

Anthony J. Piraino, Jr. and John B. Milam appeal their convictions for conspiracy to defraud the United States by dealing in counterfeit currency and Piraino's conviction for dealing in counterfeit currency. They contend that the government's conduct in investigating them was so outrageous that it violated due process principles, and appeal the district court's denial of their motion to dismiss the indictment on that basis.

I.

In September 1985, Secret Service agents learned from an informant that several people wanted to purchase counterfeit currency. The informant, Clifford Baines, a convicted counterfeiter, had been approached by Dennis Cartwright, who said he had a backer willing to purchase supplies for a counterfeiting operation. Cartwright brought the backer, later identified as appellant Piraino, to Baines' shop. Piraino told Baines that he wanted to cut Cartwright out of the deal, and the Secret Service decided to pursue separate investigations of Piraino and Cartwright.

During the investigation of Cartwright, an undercover agent helped transport a printing press, provided counterfeit printing plates, bought the necessary paper, and provided some technical assistance to Cartwright, who printed a substantial amount of currency. Cartwright was arrested in November 1985, and the counterfeit currency was seized. Fearing that Piraino would learn of Cartwright's arrest, Secret Service agents tried several times to arrange to sell him counterfeit currency. Piraino declined to buy, and the Secret Service discontinued its investigation of him.

In January, Piraino again contacted Baines seeking to buy counterfeit currency. A meeting was arranged between Piraino and Special Agent William Wess, acting undercover as a counterfeiter, at Baines' print shop. Piraino was accompanied to the vicinity of the shop by two men later identified as appellant John B. Milam and Jack Milam. The three drove to the meeting, and the Milams waited in the car while Piraino met with SA Wess. At one point Piraino left the shop and took a sample note to the car, where all three men were observed handling it. Piraino returned to the shop and arranged to meet SA Wess later that day to buy $10,000 in counterfeit currency. He then returned to the car, and the three went to a nearby bar.

Wess obtained $10,000 in counterfeit currency from the Secret Service office, met with Piraino, and received $1,000 in exchange for the $10,000 in counterfeit currency. Piraino was then arrested.

SA Wess then went to the bar where the Milams were waiting, approached them and asked if they were Piraino's friends. He told them Piraino was upset with the quality of the notes and would not go through with the deal unless the Milams approved them. He asked the Milams to check the quality of the counterfeit notes. John Milam was arrested as he handled the currency.

II.

Appellants assert the due process defense proposed in dictum in *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973), where the Court suggested that "[w]e may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." The Court elaborated on *Russell* in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), where Justice Rehnquist reaffirmed the principle that a defendant predisposed to

commit a crime cannot assert the entrapment defense, which focuses on predisposition rather than the conduct of the government's agents. *Id.* at 488–89, 96 S.Ct. at 1649. In his concurrence, Justice Powell suggested that even a predisposed defendant could successfully challenge his conviction if police behavior was sufficiently outrageous. *Id.* at 492–493, 96 S.Ct. at 1651.[1]

Only the Third and Ninth Circuits have reversed convictions on due process grounds. The due process defense has been successfully asserted in two types of cases: those concerning counterfeiting or drug manufacturing operations in which government agents or informants were heavily involved; and those in which government agents sold drugs or supplied drugs for sale by defendants. Appellants argue that this case involves both kinds of government conduct, and that the government's involvement with Cartwright's counterfeiting operation and its sale of counterfeit currency constitute violations of due process.

In a case involving a drug manufacturing operation, *United States v. Twigg*, 588 F.2d 373 (3rd Cir.1978), the Third Circuit reversed a conviction where a government informant suggested to the defendant that they jointly set up a methamphetamine, or "speed," lab. Drug Enforcement Administration agents provided the defendant with hard-to-obtain chemicals and about a fifth of the required glassware and secured a farmhouse in which to set up the lab. The government informant was in charge of the production process and provided the "know-how" required to make methamphetamine. The Third Circuit reviewed *Russell, Hampton,* and circuit cases discussing the due process defense. It concluded that:

> "[t]his egregious conduct on the part of government agents generated new crimes by the defendant merely for the sake of pressing criminal charges against him when, as far as the record

reveals, he was lawfully and peacefully minding his own affairs. Fundamental fairness does not permit us to countenance such actions by law enforcement officials and prosecution for a crime so fomented by them will be barred.

*Id.* at 381. *Twigg* was based in part on two pre-*Hampton* cases where convictions were reversed on due process grounds.[2] Similarly, in *Greene v. United States*, 454 F.2d 783 (9th Cir.1971), the Ninth Circuit found a due process violation where an agent offered to supply materials, provide an operator, and find a location for a bootlegging operation. The same agent was the sole purchaser of the bootleg liquor distilled by the defendant.

In a pre-*Hampton* case involving an illicit sale of narcotics, *United States v. West*, 511 F.2d 1083 (3rd Cir.1975), the Third Circuit reversed the defendant's conviction, holding that due process had been violated where a government agent supplied the defendant with the narcotics and then introduced the defendant to another government agent as a prospective buyer.

### III.

The government agents' conduct in their pursuit of Piraino and Milam was not so "outrageous" that it violated due process principles. First, unlike *Twigg, Greene,* and *West,* the illegal activity did not originate with the government or its informant. Piraino initiated the contact with Baines, the government informant, through Cartwright. Alerted to Piraino's interest, the agents met with him and offered to sell him counterfeit currency. When he declined, they dropped their investigation and reopened it only when Piraino again contacted Baines in January 1986.

The government agents learned of appellant Milam's involvement through surveillance of Piraino, and his involvement was corroborated by Piraino's comments about his backer and the fact that others would be distributing the counterfeit currency for

---

1. Here, appellants concede their predisposition to purchase counterfeit currency and acknowledge that they cannot assert an entrapment defense.

2. Because it relies on pre-*Hampton* cases, *Twigg* has been questioned by another Third Circuit panel. *See United States v. Beverly*, 723 F.2d 11 (3rd Cir.1983).

him. After Piraino's arrest, SA Wess approached Milam and in essence provided an opportunity for him to indicate his participation in the crime. In a sense the government "initiated" this contact, but this is not a case in which government agents approached an innocent person and offered an opportunity to participate in a crime. Milam had already indicated that he was involved by accompanying Piraino to the meeting with SA Wess and by handling the sample note.

█ Appellants have emphasized the government's conduct in helping to set up Cartwright's counterfeiting operation. The government's conduct might warrant due process analysis in an appeal of Cartwright's conviction, but it is irrelevant in this appeal by Piraino and Milam. Although the Secret Service used counterfeit currency seized in Cartwright's arrest to make the sale to Piraino, that fact alone does not splice the separate investigations back into a single investigation. Appellants cannot properly taint their convictions by referring to the government's conduct in its separate investigation of Cartwright. Moreover, the crimes for which appellants were convicted were initiated and committed in January, more than a month after Cartwright's arrest.

█ Appellants also argue that counterfeit currency is "contraband," and that the government's conduct in possessing and selling it violated due process principles. However, precisely that use of "contraband" was upheld against a due process challenge in *United States v. McCaghren*, 666 F.2d 1227 (8th Cir.1981). There, the Drug Enforcement Administration provided 300 pounds of marijuana so that an undercover agent could make a sale to the defendants. *Id.* at 1229. Furthermore, in *Hampton* the Supreme Court affirmed a conviction where the defendant contended that a government informant had supplied heroin so that the defendant could sell it to government agents. 425 U.S. at 489, 96

S.Ct. at 1649. Justice Powell's concurrence in *Hampton* recognized that the practicalities of law enforcement sometimes compel officers to provide supplies to drug manufacturing operations, or even to supply "contraband itself," and suggested that due process does not necessarily prohibit use of these and similar investigative techniques.[3] *Id.* at 491–92, 96 S.Ct. at 1650–51.

## IV.

The government's conduct in pursuing its investigation of Piraino and Milam was not "outrageous" and did not violate fundamental fairness. Piraino and Milam, through Piraino, initiated contact with the government informant and repeatedly indicated their interest in purchasing counterfeit currency. The government agents responded appropriately, and their use of counterfeit currency in the staged sale to Piraino did not violate due process principles. Accordingly, appellants' convictions are

AFFIRMED.

---

**3.** Cases holding that the government violates due process when it sells drugs to suspects predate *Hampton*. *See West*, 511 F.2d 1083, *United States v. Bueno*, 447 F.2d 903 (5th Cir.1971), *cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973); *United States v. Chisum*, 312 F.Supp. 1307 (C.D.Calif.1970).