# Issuance of Passports to Aliens to Facilitate "Sting" Operation by State Department Inspector General

The Department of State has authority to issue passports to aliens for the purpose of facilitating a "sting" operation conducted by the Department of State Inspector General.

March 13, 1989

MEMORANDUM OPINION FOR THE LEGAL ADVISOR
DEPARTMENT OF STATE

This responds to your request as to whether the Department of State has the authority "to issue U.S. passports to aliens to facilitate U.S. law enforcement and intelligence operations."[1] You have previously advised the Deputy Secretary of State that in your opinion "there were no legal constraints to the issuance of U.S. passports to aliens to facilitate a Department of State Inspector General 'sting' operation." Letter at 1. Contrary to that view, the Bureau of Consular Affairs ("CA") at the Department of State appears to take the position that it is prohibited by 22 U.S.C. § 212, among other statutes, from issuing passports to those who do not owe their allegiance to the United States, even to facilitate law enforcement efforts.[2] CA also relies in part on a statement in a 1977 OLC opinion permitting "false statements by CIA employees to obtain passports in alias and the use of passports so obtained, where necessary to their otherwise lawful functions."[3] That opinion went on to

---

[1] Letter for Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel, from Abraham D Sofaer, The Legal Advisor, Department of State at 1 (Feb. 11, 1989) ("Letter"). Although the stated question concerns issuing U S passports to aliens for both law enforcement and intelligence operations, we here address only the use of alias passports to aliens in law enforcement operations. As we understand it, the purpose of the Inspector General's investigation is to detect the "subornation of a U.S. consular officer and a large network of fake passport brokers." Action Memorandum for the Deputy Secretary of State, from Sherman M Funk and Abraham D. Sofaer, *Re Passports for IG Investigation* at 1 (Sept. 20, 1988) ("Action Memorandum") A technical violation of the law by the sovereign in order to enforce the law seems to us a different question than violation of the law to achieve unstated intelligence objectives. Because the goal of the proposed "sting" operation is quite plainly to enforce the law, we address that question only. Should you wish us also to address the question of the legality of the use of such passports in intelligence operations, we will undertake to answer this question, which appears to be one of first impression for us.

[2] Memorandum for Judge Abraham D Sofaer, from Joan M Clark, *Re. Request for a Legal Opinion From the Department of Justice*, attached to Letter at Tab 2

[3] Letter for Anthony A. Lapham, General Counsel, Central Intelligence Agency, from John M Harmon, Acting Assistant Attorney General, Office of Legal Counsel at 13 (Mar 24, 1977) ("Harmon Opinion").

state, however, that "[o]nly United States nationals ... may obtain passports." *Id.*[4]

We believe that the reasoning of a previous opinion of this Office permits the issuance of passports to facilitate an IG sting operation. *See Visa Fraud Investigation*, 8 Op. O.L.C. 284 (1984). That opinion concludes that the United States officials may issue visas to aliens statutorily ineligible to receive them in order to facilitate undercover operations for enforcement of our criminal laws. The statements from other OLC opinions on which CA relies are taken out of context and do not in fact address the question of whether passports can be issued to aliens for law enforcement purposes. Accordingly, we do not believe that there is a conflict between the 1984 Opinion and any prior opinion of this Office.

In 1984, this Office opined that "the Department of State may issue a visa to an ineligible alien in order to facilitate an undercover operation being conducted by the Immigration and Naturalization Service." 8 Op. O.L.C. at 284. That judgment was based upon the rule, well-recognized by courts, that "it is generally lawful for law enforcement agents to disregard otherwise applicable law when taking action that is necessary to attain the permissible law enforcement objective, when the action is carried out in a reasonable fashion, and when the action does not otherwise violate the Constitution." *Id.* at 287 (footnotes omitted).

The prohibition at issue here is similar to the one discussed in the 1984 Opinion. There, where the purpose was to investigate an unlawful conspiracy to circumvent U.S. visa restrictions, we said the Department of State could issue a visa to a woman who was not an American citizen despite its knowledge that the marriage making her eligible for a visa was a sham. We said that the law banning consular officers from issuing visas to aliens that the officer "knows or has reason to believe ... [are] ineligible," 8 U.S.C. § 1201(g)(3), did not bar the issuance of the visa to facilitate an effort to enforce the visa laws of the United States. 8 Op. O.L.C. at 288. Similarly, 22 U.S.C. § 212 makes it unlawful to give a passport to one who does not owe his allegiance to the United States.[5] On its face, this would prevent State Department officials from giving a passport to an alien. But here, the alien is to be granted the passport — as was the case in the oper-

---

[4] CA relies as well on a prefatory statement in another 1977 OLC opinion. *See infra* note 7.

[5] If a passport is characterized as a message to another government as to its holder's status, all decisions regarding passports (as opposed to naturalization) may fall within the exclusive domain of the President. This is due to the President's role as "the sole organ of the nation in its external relations, and its sole representative with foreign nations." *United States v Curtiss-Wright Export Corp.*, 299 U S 304, 319 (1936) (quoting 10 Annals of Cong 613 (1800) (Rep Marshall)) *See* Letter from Thomas Jefferson, Secretary of State, to Citizen Genet, November 22, 1793, 9 *Writings of Thomas Jefferson, 1789-1726* at 256 (Andrew A Lipscomb ed., Mem. ed. 1904) *quoted in* Edward S Corwin, *The President· Office and Powers 1787-1984* at 208 (5th ed 1984) (The President is "the only channel of communication between the United States and foreign nations "). Thus there is an argument (the validity of which we need not determine) that Congress may not restrict by statute the issuance of passports by the President or subordinates acting at his direction

ation approved in the 1984 opinion — to ensure that the passport laws of the United States are respected. This action, then, is consistent with the underlying purpose of the statute insofar as the short-term, controlled issuance of passports to aliens[6] is actually to ensure that passports are being issued as a matter of general practice only to those statutorily entitled to receive them. The issuance of the passports here may thus be said to be necessary to what is the functional equivalent of a legal audit of a consular official.

We need not restate at great length the discussion of the caselaw and the analysis set forth in the 1984 Opinion, for it stands on its own and accurately reflects the views of this Office. It also accurately reflects the current law, best summarized by Judge Easterbrook in *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985), *cert. denied*, 475 U.S. 1012 (1986). Upholding a conviction of Cook County judge who had accepted a bribe offered by an undercover government agent, Judge Easterbrook wrote that "[i]n the pursuit of crime the Government is not confined to behavior suitable for the drawing room. It may use decoys, and provide the essential tools of the offense," *id.* at 1529 (citations omitted). Other courts agree that the government may technically transgress the law in order to enforce it. *See, e.g., United States v. Citro*, 842 F.2d 1149 (9th Cir.) (government may supply counterfeit credit cards to uncover counterfeit credit card scheme), *cert. denied*, 488 U.S. 866 (1988); *United States v. Valona*, 834 F.2d 1334 (7th Cir. 1987) (government agent may supply cocaine to uncover drug distribution racket); *United States v. Milam*, 817 F.2d 1113 (4th Cir. 1987) (government agents may sell counterfeit currency to uncover scheme to distribute such currency); *Shaw v. Winters*, 796 F.2d 1124, 1125 (9th Cir. 1986) (police officer may sell stolen food stamps to uncover fencing operation, stating "Government agents ... may supply the contraband which is at the heart of the offense"), *cert. denied*, 481 U.S. 1015 (1987).

In addition, we do not believe that the 1984 Opinion contradicts the two previous OLC opinions on which CA relies. The question whether passports may lawfully be issued to aliens was not presented to the Office for decision in the Harmon Opinion. The "problem areas" identified by the FBI involved the "use [by the CIA] of forged birth certificates and false statements to obtain U.S. passports," Harmon Opinion at 1, not whether passports could be issued to aliens. The sentence CA rests on — that "[o]nly United States nationals ... may obtain passports," *id.* at 13 — accurately stated the relevant statutes, but neither considered nor discussed whether legitimate law enforcement objectives under controlled circumstances necessitate a technical departure from those statutes.[7]

---

[6] We assume, therefore, that upon the successful completion of the sting operation the passports will be returned, or if not possible, that consular officials be notified not to accept them

In conclusion, we agree with you that CA may issue the passport requested by the Inspector General of the State Department for their limited and controlled use in the sting operation under the stated conditions — namely, that the Inspector General "work closely with CA to safeguard the passports, and to ensure strict compliance with CA's procedural requirements."[8]

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7] The second OLC opinion CA rests upon, issued in 1977 to the FBI on the use of government documents for undercover purposes, began by stating "[w]e assume for purposes of this opinion that only United States nationals acquire passports in alias in this manner." Memorandum for Clarence M. Kelley, Director, Federal Bureau of Investigation, from John M Harmon, Acting Assistant Attorney General, Office of Legal Counsel at 1 (Feb 17, 1977) It is evident that this brief statement, made in the nature of an introduction, was intended only to state the Office's understanding of the scope of the request. The opinion was simply following the standard practice (followed in this memorandum as well) of setting forth at the beginning the question to be answered. The statement cannot be viewed as dispositive — or even persuasive — to the question now before us because the issue of whether passports could be given to aliens was not there presented or discussed

[8] Action Memorandum at 1. We have considered the issue presented with this limitation in mind. We do not here address the question of whether these passports may issue other than in compliance with CA's procedural requirements and without adequate safeguards.