877 F.2d 60
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruey Lynn DAVIS, Defendant-Appellant.
 No. 88-5580.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 16, 1989.
Decided June 14, 1989.
 
 Thomas R. Haggard, University of South Carolina Law School, for appellant.
 Vinton D. Lide, United States Attorney, David C. Stephens, Office of the United States Attorney, for appellee.
 Before ERVIN, Chief Judge, and WIDENER and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ruey Lynn Davis (R.L.) claims that the government investigation that resulted in his convictions for charges related to an auto theft ring[1] was outrageous and violated his Fifth Amendment right to due process. R.L. bases this claim primarily on the government's use of Joe B. Davis (Joe B.), his older brother, as an informant. We hold that under the facts presented the government's investigation was reasonable and did not constitute a due process violation.
 
 
 2
 * In the late 1950's, Joe B. and his sister assumed responsibility for raising R.L. because their father murdered their mother and then committed suicide. R.L. was seven years old at the time. In 1977 or 1978, Joe B. started a car theft ring. R.L. participated in the scheme from its inception.[2] R.L.'s job in the organization was actually to steal the cars.[3]
 
 
 3
 In September 1983, Joe B. was involved in a car accident while helping to transport a stolen vehicle. Joe B. sustained serious injuries and was hospitalized for approximately one month.[4] Joe B. was discharged from the hospital on crutches. Soon after his discharge, he went to a church and "got saved." At that time Joe B. promised the Lord "if you'll save my soul and let me walk without crutches that I would stop this [car stealing]." That afternoon a doctor told Joe B. that he could drive a car (and apparently intimated that Joe B. would walk without crutches). Joe B. promptly called a friend in Virginia and asked him to set up a meeting that day with an FBI agent. Joe B. drove to Virginia[5] and met with agent Craig. Joe B. offered to "do whatever they wanted me to."
 
 
 4
 The government began using Joe B. as an informant to monitor the ongoing activities of the car theft ring. His primary duty was to surreptitiously tape record conversations with members of the conspiracy. At least one tape was made during conversations held at Joe B.'s house. While Joe B. was an informant, he no longer participated in "the car stealing business." Joe B. continued in his role as informant for a four-year period. For compensation, he was paid $18,000 by the government for "expenses."[6] He asked nothing in exchange for his cooperation with the FBI, but he was allowed to retain all profits from the stolen cars he sold and he was never named in the indictment.
 
 
 5
 At trial Joe B. detailed R.L.'s participation in the scheme. The jury returned a verdict of guilty, as charged, on all counts. R.L. was sentenced to 15 years imprisonment.
 
 II
 
 6
 R.L. raises only one issue on appeal--whether the government's conduct in using his father-like older brother as an informant is outrageous conduct that bars prosecution.
 
 
 7
 The Court first suggested the outrageous government conduct defense in United States v. Russell, 411 U.S. 423, 431-32 (1973) and a majority of the Court endorsed it in Hampton v. United States, 425 U.S. 484, 493 (Powell, J., concurring in judgment), 499 (Brennan, J., dissenting) (1976). This Court has acknowledged the defense, but we have not yet reversed a conviction on this basis. See United States v. Goodwin, 854 F.2d 33 (4th Cir.1988); United States v. Milam, 817 F.2d 1113 (4th Cir.1987); United States v. Akinseye, 802 F.2d 740 (4th Cir.1986), cert. denied, 55 U.S.L.W. 3820 (U.S. June 8, 1987) (No. 86-6330); United States v. Ricks, 776 F.2d 455 (4th Cir.1985); United States v. Hunt, 749 F.2d 1078 (4th Cir.1984).
 
 
 8
 The name of the defense suggests its nature--a defendant
 
 
 9
 must show that the challenged governmental conduct violated "that fundamental fairness, shocking to the universal sense of justice" mandated by the due process clause of the fifth amendment.
 
 
 10
 United States v. Russell, 411 U.S. at 431-32, quoting Kinsella v. United States ex rel Singleton, 361 U.S. 234, 246 (1960). Thus, the defense is reserved for "the most intolerable government conduct." United States v. Jannotti, 673 F.2d 578, 608 (3d Cir.), cert. denied, 457 U.S. 1106 (1982). See also United States v. Warren, 747 F.2d 1339, 1341 (10th Cir.1984). As we have noted, the due process clause is implicated "only where the official conduct is outrageous, not simply offensive." United States v. Goodwin, 854 F.2d at 37. Therefore, it is clear that this defense is viable only in rare cases.
 
 
 11
 In evaluating this defense, we look at the totality of the circumstances. See Owen v. Wainwright, 806 F.2d 1519, 1521 (11th Cir.), cert. denied, 55 U.S.L.W. 3793 (U.S. May 26, 1987) (No. 86-6662); United States v. Tobias, 662 F.2d 381, 387 (5th Cir.1981), cert. denied, 457 U.S. 1108 (1982). At the outset, we note that, in this context, it is important to remember that "in order to apprehend those engaged in serious crime, government agents may lawfully use methods that are neither appealing nor moral if judged by abstract norms of decency." United States v. Bogart, 783 F.2d 1428, 1438 (9th Cir.1986). Thus, the Court has long approved the use of informants and/or undercover police officers to combat crime. See Sorrells v. United States, 287 U.S. 435 (1932). This recognition is even more pertinent in present times--the "practicalities of law enforcement" often require unusual stratagems and tactics to police sophisticated criminal activity. See United States v. Milam, 817 F.2d at 1116.
 
 
 12
 In examining the totality of the circumstances, R.L. urges us to disregard his predisposition to steal cars because he contends that is irrelevant to the outrageous government conduct defense. R.L. argues that our analysis should only focus on the government conduct in this case, citing United States v. Lomas, 706 F.2d 886, 891 (9th Cir.1983), cert. denied, 464 U.S. 1047 (1984), and United States v. Gonzales-Benitez, 537 F.2d 1051, 1055 (9th Cir.), cert. denied, 429 U.S. 923 (1976). We reject R.L.'s argument and conclude that while predisposition is not conclusive of the issue, it is a factor to be considered. See Hampton v. United States, 425 U.S. at 495 n. 7 (Powell, J., concurring) ("I emphasize that the cases, if any, in which proof of predisposition [of the defendant] is not dispositive will be rare."); United States v. Milam, 817 F.2d at 1115-16. Moreover, we agree with the Ninth Circuit's perceptive recognition that the cases which refuse to apply the defense "invariably conclude that when the government conduct occurred the defendant was involved in a continuing series of similar crimes, or that the charged criminal enterprise was already in progress at the time the government agent became involved." United States v. Bogart, 783 F.2d at 1437. We do not denigrate or ignore the legitimate concerns expressed by Justice Brandeis in his dissent in Olmstead v. United States, 277 U.S. 438, 485 (1928) ("To declare that in the administration of the criminal law the end justifies the means ... would bring terrible retribution"). Rather, we merely recognize that the investigation of known criminals often requires more creative investigative techniques. Therefore, we consider the predisposition of the defendant as a factor in our analysis.
 
 III
 
 13
 Before we examine the merits of R.L.'s argument, we note that R.L. only specifically raised an entrapment defense at trial and raised the outrageous government conduct defense for the first time on appeal. As R.L. concedes, the entrapment defense is related, but distinct from the outrageous government conduct defense.[7] See United States v. Akinseye, 802 F.2d at 743. Therefore, there is a question whether this issue is properly preserved for our review.
 
 
 14
 R.L. contends that the issue is preserved because the issue presents a pure legal question and cites United States v. Cuomo, 479 F.2d 688, 691-92 (2d Cir.1973). We note that, in a later case, United States v. Nunez-Rios, 622 F.2d 1093, 1098-99 (2d Cir.1980), the Second Circuit held that this defense is directed at alleged defects in the institution of the prosecution under Fed.R.Crim.P. 12(b)(1) and therefore, must be raised by pre-trial motion or is waived on appeal. Id. Other district courts have endorsed this view. See United States v. Dunn, 608 F.Sup. 530 (W.D.N.Y.1985); United States v. Valdovinois-Valdovinois, 588 F.Supp. 551 (N.D.Cal.1984), rev'd on other grounds, 743 F.2d 1436 (9th Cir.1984), cert. denied, 469 U.S. 1114 (1985); United States v. Batres-Santolina, 521 F.Supp. 744 (N.D.Cal.1981).
 
 
 15
 Even if we were to assume that R.L. has adequately preserved this issue for appeal, we would reject his claim. Unlike many undercover operations, the investigation in this case was initiated by one of the members of the (ongoing) conspiracy, not the government. Moreover, there is no evidence in the record that the government did anything to assist in the operation of the conspiracy. The government's activity is best characterized as the monitoring of an ongoing criminal conspiracy. Therefore, the government is not guilty of creating crime to get a criminal conviction. See United States v. Archer, 486 F.2d 670, 676-77 (2d Cir.1973) ("It would be unthinkable, for example, to permit government agents to instigate robberies and beatings merely to gather evidence to convict other members of a gang of hoodlums"). Furthermore, we note that R.L. was already stealing cars when this conspiracy originated. Thus, we conclude that the government conduct in this case was passive, restrained, and not unreasonable.[8]
 
 
 16
 We dispose of oral argument because the facts and legal contentions are adequately presented in the record before this Court and oral argument would not aid the decisional process.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 R.L. was convicted of seven counts of interstate transportation of stolen vehicles, 18 U.S.C. Sec. 2312, and one court of conspiracy to transport stolen vehicles across state lines, 18 U.S.C. Sec. 371. He was sentenced to 15 years imprisonment
 
 
 [2]
 The testimony at trial suggests that Joe B. recruited R.L. into this particular scheme, but did not get R.L. started in the "car stealing business" as he was already stealing cars with another group
 
 
 [3]
 The different members of the ring performed a variety of functions--stealing the cars, transporting the cars, performing body work, changing identification numbers, and selling the cars
 
 
 [4]
 The other person in the car with Joe B. died as a result of the accident
 
 
 [5]
 Joe B. lived in Greenville, Tennessee
 
 
 [6]
 These expenses included travel costs, costs of making the tape, and lost income from his business necessitated by his government work
 
 
 [7]
 The entrapment defense, in the federal system, is a statutory defense, see United States v. Akinseye, 802 F.2d at 743 n. 2, and, unlike the outrageous government conduct defense, focuses on the predisposition of the defendant. United States v. Hunt, 749 F.2d at 1085
 
 
 [8]
 We acknowledge some concern over the four-year duration of the government's investigation but, in light of the extensive scope of the investigation (20 people were indicted), we do not view this as an unreasonable length of time