896 F.2d 1368
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Groves ELLIOTT, III, Defendant-Appellant.
 No. 89-5533.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 8, 1989.
Decided: Feb. 8, 1990.
 
 Johnny Royce Morgan, for appellant.
 Christine Witcover Dean, Assistant United States Attorney (Margaret Person Currin, United States Attorney, Robert D. Boyce, Assistant United States Attorney, on brief), for appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Jerry Groves Elliott appeals from the judgment entered after he was convicted by a jury of charges arising from his sale of cocaine to an undercover police officer. Elliott argues on appeal that the government failed to present sufficient evidence of predisposition to commit a crime and that the government's orchestration of the narcotics transaction was so outrageous that it violated his due process rights. We find no merit in these contentions and therefore affirm the district court.
 
 
 2
 * Elliott was charged in a three-count superseding indictment with possession with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), possession of a firearm during a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c)(1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. Sec. 922(g)(1). The government's principal witness was Officer Myles Tart of the Harnett City/County, North Carolina, Bureau of Narcotics. He testified that he made contact with an informant, Sheila Page Barefoot, he had used before and who he knew had an association with Elliott. He told Barefoot, Elliott's former live-in girlfriend and mother of his two children, that he was interested in making a cocaine purchase from Elliott. Elliott had prior convictions for drug possession and trafficking. Barefoot agreed to help make the contact with Elliott and indicated that she would call Tart one week later to report her progress.
 
 
 3
 Tart testified that he received a call from Barefoot five days later on August 19, 1988. According to Tart, Barefoot reported that Elliott was ready to make the sale that day because he was going out of town over the weekend. Tart met Elliott and Barefoot at the designated place, Kitty's Grocery, near Erwin, North Carolina. Tart approached the car, suggested that he get inside, and entered the front seat passenger side after receiving an affirmative response from Elliott. Tart asked to see what defendant had; Elliott reached under the edge of his seat and handed Tart a bag which contained cocaine. Tart negotiated the price with Elliott, then left the car after telling Elliott that he needed to return to his own car to get his money. Tart confirmed that his fellow agents had seen the "take down" signal, reapproached the car and arrested Elliott.
 
 
 4
 The police searched Elliott and the car after the arrest. In addition to the cocaine, Tart testified that the police officers recovered a Derringer pistol from Elliott's pocket and bullets from another pocket. The police also found a straw and a syringe and needle in Elliott's pocket; an additional syringe was recovered from the car.
 
 
 5
 Elliott testified in his own defense and offered a different version of the events of August 19. He said that he had received numerous phone calls from Barefoot during the previous evening and into the early morning of August 19. He testified that Barefoot told him that she and their two sons were in danger and asked him to come over to pick them up. Elliott eventually agreed to come over early on August 19, but when he arrived Barefoot met him and told him to drive away and that the children were safe. The two drove around the area while Barefoot tried to find a place to stay; they eventually checked into a motel for a short time. After leaving the motel, Elliott allowed Barefoot to take the car alone for some ten minutes before she returned to pick him up.
 
 
 6
 Elliott testified that he then agreed to go to Kitty's Grocery, supposedly to meet another one of Barefoot's former boyfriends who had agreed to help her. He claimed to know nothing of a drug sale when Tart approached and said that when he picked up Barefoot there were no drugs in his car. According to Elliott, only Tart and Barefoot conversed in the car. Barefoot then pushed the bag with the drugs under the seat to him and told him to give it to Tart. He testified that he took the bag and threw it to Tart, who immediately arrested him. He denied that the Derringer was his and said that the syringes belonged to Barefoot, though he did not deny that the straw was in his pocket. He also admitted when asked that he had not tried to stop the transaction or withdraw from it.
 
 
 7
 The jury convicted Elliott on all three counts. This appeal followed.
 
 II
 
 8
 Elliott's principal contention on appeal is that the government failed to present sufficient evidence to prove that he was predisposed to sell cocaine to Officer Tart. The government has the burden to prove beyond a reasonable doubt that a defendant was predisposed to commit a crime once the defendant has presented evidence of inducement by government agents. See United States v. Hunt, 749 F.2d 1078, 1084-85 (4th Cir.1984). The question of a defendant's "predisposition" thus arises when a defendant comes forward with some evidence of an entrapment defense. Elliott certainly has not presented a classic entrapment case; his testimony seems to focus not on any inducement that would raise the entrapment issue, but rather on his lack of knowledge of what amounts to a contrived sale designed to frame him. The government, of course, always has the burden to prove criminal intent, and we find the evidence, viewed in the light most favorable to the government, clearly sufficient to support the jury's finding of guilt. See United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989); see also Lewis v. United States, 385 U.S. 206, 208-10 (1966) (mere fact of deceit will not necessarily defeat a prosecution); cf. United States v. Demma, 523 F.2d 981, 985 (9th Cir.1975) (noting that inconsistent testimony by defendant claiming entrapment and denying the acts and other elements of crime charged potentially destroys his credibility).
 
 
 9
 The district court in this case did give an instruction to the jury on the entrapment defense and predisposition. The question of predisposition is one for the jury unless the evidence is plainly insufficient as a matter of law. Hunt, 749 F.2d at 1085. Among the factors courts consider in evaluating a defendant's predisposition are the defendant's character, including any prior criminal record; whether the suggestion of criminal activity was initially made by the government; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated governmental inducement or persuasion; the nature of the inducement or persuasion and the defendant's ready response to it. See id.; United States v. Reynoso-Ulloa, 548 F.2d 1329, 1336 (9th Cir.1977). The jury's finding of guilt must be upheld on appeal if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found predisposition to exist beyond a reasonable doubt. Hunt, 749 F.2d at 1085.
 
 
 10
 The government presented sufficient evidence of predisposition to take the issue to the jury, and viewing the evidence in the light most favorable to the government, the jury could have found predisposition beyond a reasonable doubt. Elliott had a prior record of drug trafficking, he was arrested with drug paraphernalia, and he admitted that he did not try to withdraw from the situation when it became clear, even under his own version of the facts, that a drug sale was taking place. Although the opportunity for the illegal activity was in this case initiated by the government, " '[i]t is sufficient if the defendant is of a frame of mind such that once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion.' " Hunt, 749 F.2d at 1085 (quoting United States v. Williams, 705 F.2d 603, 618 (2d Cir.1983)). We reject Elliott's contention that the government's proof is insufficient as a matter of law because Barefoot did not testify,[1] leaving his version of the events leading up to the transaction at Kitty's Grocery uncontradicted. See Hampton v. United States, 425 U.S. 484, 488-89 (1976).[2]
 
 III
 
 11
 Elliott also contends that the government's conduct in initiating the contact with an informer and arranging the cocaine sale involving him was so outrageous that it violated the fundamental fairness principles inherent in the due process clause. He argues that, as a matter of law and separate from any question of predisposition, if the government's conduct is sufficiently outrageous, a conviction cannot stand. Although a defendant apparently can still raise this due process challenge as a separate defense, see United States v. Russell, 411 U.S. 423, 431-32 (1973); Hampton, 425 U.S. at 492-93 (Powell, J., concurring); id. at 499 (Brennan, J., dissenting); see also United States v. Goodwin, 854 F.2d 33, 36-37 (4th Cir.1988), the government's conduct was not outrageous in this case.
 
 
 12
 In Hampton, the Court refused to find "outrageous" the government's use of informants to arrange the sale of narcotics that served as the basis for a defendant's conviction even where it apparently accepted the defendant's story that the informant supplied the substance sold to government agents. See Hampton, 425 U.S. at 489 (plurality opinion); id. at 491-92 (Powell, J., concurring). The Court reaffirmed the judgment expressed in Russell, 411 U.S. at 432, that the practicalities of combating narcotics traffic frequently require law enforcement officers to infiltrate and legitimately to supply some item of value that the drug ring requires.
 
 
 13
 Elliott attempts to distinguish Hampton by arguing that the government initiated the idea of a narcotics sale and then used Barefoot to set up the sale. See United States v. Milam, 817 F.2d 1113, 1115 (4th Cir.1987) (distinguishing case sub judice from three cases in which due process violations were found because "the illegal activity did not originate with the government or its informant"). He relies on United States v. Twigg, 588 F.2d 373 (3d Cir.1978), a post-Hampton case in which the court held that government agents' heavy involvement in supplying materials and the physical plant for a drug manufacturing operation required reversal on due process grounds. Even accepting Elliott's version of the facts, the government in this case was far less involved in the criminal design and enterprise than in Twigg; the fact that the government initiated contact with Elliott through an informant is not sufficient by itself to raise due process concerns. See Hunt, 749 F.2d at 1080 (government undercover agents initiate contact with third party who then arranges meeting with defendant Hunt); cf. Russell, 423 U.S. at 425, 431 (government agent initiates contact with drug manufacturers; defendants admitted making drugs before and after interaction with undercover agent).
 
 IV
 
 14
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Officer Tart testified that the government could not locate Barefoot for trial
 
 
 [2]
 The holding of the case on which Elliott principally relies, United States v. Bueno, 447 F.2d 903 (5th Cir.1971), was repudiated by the Supreme Court in United States v. Russell, 411 U.S. 423 (1973). The Court in Russell held, and the Court in Hampton reemphasized, that the focus of the inquiry when a defendant raises an entrapment defense is the defendant's intent or predisposition, not the conduct of the government's agents