912 F.2d 464
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Lincoln YOUNG, Defendant-Appellant.
 No. 89-5491.
 United States Court of Appeals, Fourth Circuit.
 Argued July 18, 1990.
Decided Aug. 28, 1990.
As Amended Sept. 19, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, District Judge. (CR-89-2-7)
 Thomas Peter McNamara, McNamara, Pipkin, Knott & Carruth, Raleigh, N.C., for appellant.
 Sean Connelly, United States Department of Justice, Washington, D.C., (argued), for appellee; Margaret P. Currin, United States Attorney, Christine Witcover Dean, Assistant United States Attorney, Raleigh, N.C., Sidney Glazer, Acting Chief, Criminal Division, United States Department of Justice, Washington, D.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gary Lincoln Young appeals his conviction for conspiracy to possess and distribute cocaine, contending that (1) his unsolicited statements to an undercover agent should have been suppressed, and (2) his post-arrest comment to another agent was also improperly admitted. Finding neither of the arguments persuasive, we affirm.
 
 I.
 
 2
 The government's evidence at Young's trial, which came largely from the testimony of Curtis Ray Johnson, established the following. Testifying in exchange for a more lenient sentence, Johnson stated that he first met Young in January 1987, and promised that he could beat the price Young had been paying for cocaine previously. After the initial meeting, Johnson and Young engaged in several large cocaine transactions in 1987-1988. Typically, Johnson would travel to Florida from North Carolina to receive the drugs from Paul Pavloff and his supplier, Shinnosuke Ono, and then sell the cocaine back to Young. During one of these return trips to North Carolina in April 1988, Johnson was arrested by a team of state and federal agents.
 
 
 3
 In the interim, on March 28, 1988, Young met with an undercover agent from the Drug Enforcement Agency (DEA), Richard Daniels, and a confidential informant in Atlanta to discuss a separate marijuana transaction. At that meeting, Agent Daniels provided Young with a sample of marijuana to inspect. After checking out the marijuana, Young made unsolicited comments to Daniels about his separate cocaine dealings, mentioning that he was getting about five kilograms of cocaine per month from Nathan "Stumpy" Hicks, who in turn received it from Johnson. Young also made comments regarding the poor quality of Johnson's cocaine.
 
 
 4
 Young was subsequently arrested in January 1989. On the day of his arrest, Young looked at a copy of his indictment while returning from court and stated that he "didn't know anybody on the indictment other than Curtis." An agent from the North Carolina authorities (Agent Wayne Johnson) responded that "that's who [you] should be concerned about." Young then turned around to Agent Johnson and stated, "he's a peon."
 
 
 5
 Prior to trial, Young moved to suppress both the comments made to Agent Daniels during the undercover meeting and the "peon" statement made to Agent Johnson. Young contended that the statements regarding his cocaine deals with Curtis Johnson should be excluded because he had been entrapped into participating in the marijuana scheme by the government-provided sample. Similarly, Young argued that the "peon" statement was made during the course of a custodial investigation in violation of Miranda.
 
 
 6
 Initially, the district court granted the defendant's motion regarding the "Atlanta" statements but denied it with respect to the "peon" statement. The district court found that the government had failed to produce evidence of predisposition to rebut the presumption of entrapment which arises when "a defendant establishes that the government was the source of illegal narcotics" in an undercover operation.
 
 
 7
 Upon the government's motion to reconsider, however, the district court ruled the statements admissible. Admitting that at the time of the motion the court thought the marijuana transaction part of the conspiracy indictment, the court ruled that the "government may inquire into admissions made by defendant Young during the alleged transaction, but may not introduce, on direct examination, evidence of the drug transaction itself which allegedly took place at that time."
 
 
 8
 At trial, the government offered, in addition to Curtis Johnson's testimony and the defendant's Atlanta statements, the corroborating testimony of several state and federal case agents, all of whom detailed the Curtis Johnson cocaine ring and Young's role in it. Young did not testify, but his wife and mother attempted to explain and challenge several of the government's accusations. For example, the government charged that Young was participating in a cocaine transaction with Johnson in North Carolina on December 1-2, 1987, but Young's wife testified that she spoke with the defendant by telephone in West Virginia on December 2. The jury was not persuaded and returned a guilty verdict.
 
 II.
 A. The "Atlanta" Statements
 
 9
 We note at the outset that Young does not maintain that his incriminating statements were the direct product of unlawful government action, but rather that the statements were "the fruit of the poisonous tree" planted by the government agents when they volunteered the sample marijuana. It is agreed by both parties that, with respect to the marijuana transaction, the defendant met his initial burden regarding entrapment, and that the burden had shifted to the government to come forward with evidence establishing the defendant's predisposition to commit the offense charged. See Hampton v. United States, 425 U.S. 484 (1976); United States v. Russell, 411 U.S. 423 (1973).[1] However, it is clear that such a burden applies to the government only if the drugs provided formed the basis of the offense charged. Entrapment is not, as the defense suggests, a violation of the constitution that can give rise to the application of the "fruit of the poisonous tree" doctrine, but a legal defense to crimes charged in an indictment. Consequently, there is no exclusionary rule with respect to entrapment. Cf. Lopez v. United States, 373 U.S. 427, 440 (1963) (no evidence of entrapment found; "court's inherent power to refuse to receive material evidence is a power that must be sparingly exercised"). The entrapment doctrine provides only for an acquittal of the substantive offense charged, and then only if the defendant demonstrates that sufficient evidence supports the defense of entrapment, and the government fails to meet its burden regarding predisposition. Thus, had the government charged Young with possession of marijuana, then the district court's original finding of no predisposition would bar that prosecution. But here, with a wholly unrelated charge of cocaine conspiracy, the merits of the district court's ruling regarding predisposition to buy marijuana cannot be used to suppress evidence in the cocaine trial. Accordingly, the district court was well within its authority in allowing into evidence Young's statements regarding his cocaine transactions with Curtis Johnson.
 
 B. The Post-Arrest "Peon" Statement
 
 10
 Relying on Edwards v. Arizona, 451 U.S. 477 (1981), defendant argues that the district court should have excluded his post-arrest statements about the indictment and about Curtis Johnson being a "peon." In Edwards, the Court addressed the issue of custodial interrogation and determined that where an accused is in custody and has exercised his right to counsel, "waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends [on the facts and circumstances of each case]." 451 U.S. at 482. Applying that test, the Court stated that when a suspect has been given his Miranda warnings, "[he] is not subject to further interrogation by the authorities until counsel has been made available, unless the accused himself initiates further communication, exchanges, or conversations with the police. " Id. at 484-85 (emphasis added).[2]
 
 
 11
 There are two statements that Young made here: the one about the indictment and the "peon" one. Young admits that his first comment was purely voluntary but he argues that it was not one which "reasonably [could] have been interpreted by the officer as relating generally to the investigation." Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983).[3] We do not agree. Commenting on the indictment directly after arrest clearly "relates generally" to the conspiracy investigation. Not giving up, Young maintains that even if the first statement was made voluntarily, the "peon" comment was made in response to further, improper interrogation by the government (i.e., Agent Johnson's statement that "that's who [you] should be concerned about"). That argument too must fail, as the agent's comment was not an invitation to further questioning but a mere declarative answer to Young's volunteered comment. See United States v. Jackson, 863 F.2d 1168, 1172 (4th Cir.1989) (agent's comment that defendant "should just think about" a coconspirator "was in the form of a declaration, not a question. It came only in response in a conversation which [the defendant] himself initiated, and it should not be construed as an attempt to solicit information from [him].") (citations omitted).
 
 
 12
 Accordingly, the conviction of defendant Young is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 That is not to say that the government agrees that a different standard should apply when the government is "the source of the narcotics." Although some older decisions suggest that a different standard should apply, see, e.g., United States v. West, 511 F.2d 1083 (3d Cir.1975), this court has questioned the continuing validity of West and other, similar cases. United States v. Milam, 817 F.2d 1113, 1116 n. 3 (4th Cir.1987) (questioning validity of West and other pre-Hampton "[c]ases holding that the government violates due process when it sells drugs to suspects")
 
 
 [2]
 In the instant case, Young was read his Miranda rights properly, but he never expressly invoked his wish to remain silent until counsel was appointed
 
 
 [3]
 In Bradshaw, the defendant, after being advised of his Miranda rights and requesting an attorney, spontaneously asked "Well, what is going to happen to me now?" A divided Court found that the question "evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship." 462 U.S. at 1045-46