**UNITED STATES of America,
Defendant–Appellee,**

v.

**Ralph E. GOODWIN,
Plaintiff–Appellant.**

**No. 88–5011.**

United States Court of Appeals,
Fourth Circuit.

Argued June 23, 1988.

Decided Aug. 4, 1988.

J. Frederick Sinclair (Cohen, Dunn & Sinclair, on brief), for plaintiff-appellant.

Paul G. Cassell, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., on brief), for defendant-appellee.

**34**

Before PHILLIPS, and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

Ralph Goodwin appeals his child pornography conviction under 18 U.S.C. § 2252(a)(2).[1] He challenges the anticipatory search warrant that allowed postal inspectors to seize the pornographic material almost contemporaneously with its delivery. He also asserts that the government's conduct leading to his arrest was so outrageous as to violate his due process rights. Finding no merit in these claims, we affirm the conviction below, 674 F.Supp. 1211.

## I.

Goodwin's prosecution arose out of the National Child Pornography Reverse Sting Project known as "Operation Looking Glass." This program was conceived and implemented by the U.S. Postal Inspection Service to ferret out and prosecute those who receive child pornography through the mails. The directors of the project set up the Far Eastern Trading Company, Ltd. of Hong Kong, as an undercover child pornography mail order firm. Hong Kong was chosen, with the permission of the local government, because substantial amounts of child pornography originate overseas. To lend further authenticity, a branch office was established in Frederiksted, St. Croix, Virgin Islands. Judge Ellis, writing for the district court, explained how the project worked and Goodwin's participation in the scheme:

> The method of operation was simple and effective. In general, various means were used to identify persons, initially at least, as predisposed towards child pornography. Typically, initial identification of targets was accomplished by answering advertisements apparently seeking

such material or by the use of lists transmitted by the Customs Service of persons to whom offending material had been sent from overseas and then seized. Subsequent test correspondence was sent to confirm predisposition. Thereafter, the target was sent a catalog and order form. This material, as well as the pornographic materials themselves, was assembled by the government at Operation Looking Glass' facilities in Newark, N.J. All pornography materials used in the operation were taken from material earlier seized by the authorities. Orders received were filled by sending the material from Newark to Postal Inspector Northrop in Washington, D.C., who in turn placed the material in an envelope with a St. Croix stamp and postmark and then had the postal service deliver the material to the individual. Very shortly thereafter, the individual was visited by the authorities armed with a search warrant. The arrest followed.

In the instant case, the essential facts fit this pattern. Defendant, Ralph E. Goodwin, Jr., first came to the Postal Inspection Service's attention in September, 1983, when he placed the following advertisement in the October issue of now defunct Met Forum, a Washington area swinger's magazine.

> Wanted: Lollitots, moppets & chicken magazines & photographs. If you have single copies you want to sell, send your telephone number to MP Code 3941.

Test correspondence with the person who placed the ad revealed that it was the defendant, Ralph Goodwin, and that defendant was a "beginner," whose "latent desires" were just then emerging. The September, 1983 test letter received from defendant confirmed his interest in obtaining the types of material described in the ad as well as accounts of personal

---

**1.** The statute provides, in pertinent part,

(a) Any person who—

\*   \*   \*   \*   \*   \*

(2) knowingly receives, or distributes, any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed or knowingly reproduces any visual

depiction for distribution in interstate or foreign commerce or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

. . . .

experiences. He identified himself as a mid-forties, married, white male with four children and employed by a large advertising firm.

While the 1983 ad and resulting correspondence were the first evidences of defendant's predisposition, they were not the last. Mr. Goodwin was also known to the Postal Inspection Service through additional test correspondence. In this correspondence, defendant stated that he spent over $100 a year on hard core pornography usually through the mails or from Europe and that he was interested in teenage and pre-teenage sexual activity involving both heterosexual and homosexual activity.

Defendant's contact with Operation Looking Glass leading to his arrest and indictment commenced in March, 1987. Based on substantial previous evidence of predisposition, the Far Eastern Trading Company sent him a solicitation letter on March 20, 1987. The letter, on Hong Kong stationery, was enclosed in an envelope on which defendant's name was incorrectly spelled as "Goodwon". This solicitation letter plainly focused on child pornography.... The letter included a response coupon, which defendant filled out requesting further information. He also signed a disclaimer on the response coupon, promising that he was not an undercover law enforcement agent. The disclaimer added authenticity to the letter. Defendant mailed the completed response form to the St. Croix address, where it was forwarded unopened to Inspector Northrop in Washington, D.C. Northrop opened the letter on April 30, 1987.

In response to defendant's request for more information, a mailing containing a catalog of available mail order child pornography material was sent to defendant by the Far Eastern Trading Company, with United States postage affixed and a Virgin Islands postmark. The catalog provided detailed descriptions of seven video tapes, two 8mm films and seven magazines, all dealing with child pornography. Each item was generally described as consisting of visual depictions of minors engaged in sexually explicit conduct. Two letters were also included in the mailing. One informed defendant of the procedures to follow in ordering material, while the second provided information to those who wished to sell child pornography to Far Eastern Trading Company.

Defendant responded by placing an order. On May 14, 1987, a letter from defendant was received at Far Eastern's Virgin Islands post office box. The letter bore a May 3, 1987, northern Virginia postmark and was forwarded to Inspector Northrop in Washington who opened it on May 15, 1987. The letter contained an order from defendant for four magazines advertised in the catalog together with a check for $80.00 signed by defendant and drawn on the business account of Business Promotions, Inc. at First Virginia Bank, Falls Church, Virginia. The letter requested that the material be sent to 10208 Tamarack Drive, Vienna, Virginia 22180, defendant's home address. The four magazines defendant ordered, *Torrid Tots, Lolita Sex, Children Love,* and *Boys Who Love Boys* all were advertised as depicting children in sexually explicit situations. It is stipulated and the court agrees, that each magazine contains visual depictions of sexually explicit conduct involving individuals under the age of 18 years as defined in 18 U.S.C. § 2256.

Far Eastern, through its Newark, N.J. office, responded to defendant's order by preparing two of the magazines, *Children Love* and *Boys Who Love Boys,* for mailing. The magazines were prepared under controlled circumstances from material previously seized or purchased during Postal Inspection Service investigations. The material defendant ordered was then sent from Newark to Inspector Northrop in Washington who in turn had the material delivered to defendant at his home by the United States Postal Service on June 10, 1987. The envelope was sealed, stamped and postmarked at the time of its delivery, which occurred at approximately 1:00 p.m. on June 10, 1987

and which was observed by postal inspectors. Thereafter, at about 4:00 p.m., postal inspectors executed a search warrant at defendant's residence and recovered, *inter alia*, correspondence to and from Far Eastern Trading Company, a typewriter used by defendant to type letters to Far Eastern, and the two child pornography magazines delivered to defendant earlier in the day. Also recovered were a large volume of nudist and sexually explicit material depicting children as well as adults. (Footnotes omitted).

## II.

Goodwin maintains that the search warrant issued by the magistrate was improper because the magazines had not yet been delivered to his house. He argues that such an "anticipatory" warrant violates the Fourth Amendment because probable cause to believe that the materials were at the house did not exist at the time the warrant issued. We believe the warrant was properly issued.

Many courts have affirmed the validity of anticipatory warrants. *See e.g., United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir.1982); *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.), *cert. denied* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States v. Outland,* 476 F.2d 581, 583 (6th Cir.1973); *United States ex rel. Beal v. Skaff,* 418 F.2d 430, 432–34 (7th Cir.1969); *United States v. Feldman,* 366 F.Supp. 356, 362 (D.Ha.1973); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); *Alvidres v. Superior Court,* 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (1970). But see *United States v. Flippen,* 674 F.Supp. 536, 538–41 (E.D.Va.1987) (finding anticipatory warrant improper because of lack of "exigent circumstances") (*dictum*), *appeal docketed,* No. 88–5041 (4th Cir. Mar. 14, 1988).

We agree with the analysis of the Ninth Circuit in *United States v. Hale,* 784 F.2d 1465, 1468–69 (9th Cir.1986), which upheld an anticipatory search warrant for child pornography. That court explained that where the contraband to be seized "is on a sure course to its destination, as in the mail, prior issuance of a warrant is permissible." *Hale,* at 1468. In this case that standard is met. Inspector Northrop's affidavit described in detail correspondence with Goodwin evidencing his predisposition, the verification of his residence, and his requests for specific materials. In paragraphs 19 through 21 of the affidavit, Northrop explained that he would cause the materials to be delivered via the mails. Because it is undisputed that these events occurred, we think the affidavit sufficed to establish probable cause. *United States v. Goff,* 681 F.2d at 1240.

Goodwin next argues that by establishing Project Looking Glass, the government was "overreaching" and his conviction should be reversed due to this outrageous conduct. Believing as we do, that the government's conduct was not unreasonable and *a fortiori* not outrageous, we find this second argument without merit.

Any analysis of a due process argument based on the government's conduct in a reverse sting operation begins with *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), where a divided Supreme Court rejected the defendant's due process claim. In *Hampton,* the government posed as both a supplier and a buyer of heroin thereby obtaining a conviction of Hampton for selling the drug. A plurality of the court expressed the belief that the due process clause cannot be used to overturn a conviction on grounds of governmental misconduct without a violation of a protected right of the defendant. *Hampton* did not eliminate the outrageous government conduct defense,[2] but it did

**2.** *See e.g., United States v. Gamble,* 737 F.2d 853 (10th Cir.1984); *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978), and *United States v. Akinseye,* 802 F.2d 740, 743 n. 2 (4th Cir.1986) (even assuming the existence of a due process defense,

the government's behavior did not rise to the level of a violation), *cert. denied,* —— U.S. ——, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *United States v. Hunt,* 749 F.2d 1078 (4th Cir.1984).

make clear that a due process violation exists only where the official conduct is outrageous, not simply offensive. Outrageous is not a label properly applied to conduct because it is a sting or reverse sting operation involving contraband. *See, Hampton,* 425 U.S. at 495 n. 7, 96 S.Ct. at 1652–1653 n. 7 (Powell, J. concurring).

The government's involvement in this case is substantially less than in *Hampton,* thus we reject Goodwin's defense. The postal inspectors never dealt with Goodwin personally or through an informant. They dealt with him through the mails. Further, we note our agreement with the district court's admonition that the due process calculation must consider the nature of the crime involved. Congress recognized that "the production, distribution and sale of child pornography is often a clandestine operation." 1978 U.S. Code Cong. & Admin. News 40, 43. Project Looking Glass provides a means by which consumers of this secret, criminal material can be detected.[3] As applied to Goodwin, Project Looking Glass was neither shocking nor offensive to traditional notions of fundamental fairness. His conviction is

AFFIRMED.

---

**3.** Goodwin also contends that the government improperly "manufactured" jurisdiction in this case citing *United States v. Brantley,* 777 F.2d 159 (4th Cir.1985), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). *Brantley* concluded that federal jurisdiction in a Hobbs Act case had not been established where federal agents made a "wholly unnecessary" move across state lines. 777 F.2d at 163. Here, however, use of the mails was an entirely necessary element of the undercover operation, which was national in scope. The government agents had to rely on the mails since they could not convincingly deliver these materials in person. Establishing the undercover office in the Virgin Islands added an air of authenticity to the operation, although, for purposes of jurisdiction, an office in Arlington would have been more than sufficient. Finally, we note that 18 U.S.C. § 2252 does not require proof of interstate commerce, only that the pornography was mailed.