Lawrence F. Gepford, Kansas City, Mo., for appellant.

Anita Mortimer, Kansas City, Mo., for appellee.

**UNITED STATES of America, Appellee,**

v.

**Kenneth L. MUSSLYN, Appellant.**

**No. 88–1877WM.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1988.

Decided Jan. 17, 1989.

Before BOWMAN and MAGILL, Circuit Judges, and BATTEY,* District Judge.

PER CURIAM.

Appellant Kenneth L. Musslyn (Musslyn) entered a conditional guilty plea in United States District Court for the Western District of Missouri[1] for unlawfully receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). The issues raised on appeal are: (1) whether Musslyn's due process rights were infringed upon by outrageous governmental conduct and (2) whether the search of Musslyn's home violated the fourth amendment. For the reasons which follow, we find that Musslyn was not the victim of outrageous government conduct and that the search warrant was proper.

I. FACTS

The United States Postal Service created "Crusaders for Sexual Freedom (CSF)," an undercover operation to investigate illegal mailings of child pornography. Musslyn was identified as a person who had an interest in child pornography. CSF sent a membership application to Musslyn. On May 5, 1982, Musslyn completed the application for CSF membership identifying

---

* The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable D. Brook Bartlett, Judge, United States District Court for the Western District of Missouri.

himself as a person interested in sexual material involving preteen children.

Musslyn later followed up his application with a letter to CSF stating "he hadn't heard from CSF from some time and would like their most current issue if a new one is out."

On June 2, 1982, a postal agent contacted Musslyn stating she was a member of CSF and a collector of hard-to-find erotic photos and films and wished to find someone with like interests to trade with. Musslyn corresponded with this postal agent about child pornography and his sexual experiences involving children.

On December 7, 1983, Musslyn met this postal agent at a bar in Kansas City. Their conversation was tape recorded by the agent and later transcribed. During this meeting Musslyn reiterated his interest in sexual activity involving children. Musslyn continued to correspond with the undercover postal agent.

On March 28, 1985, Musslyn submitted a completed application to a second undercover postal operation titled, "American Hedonist Society." He again indicated a strong interest in preteen sex and "family love."

Finally, on March 7, 1987, an agent for the United States Custom Services involved in "Operation Borderline" sent to Musslyn a brochure offering photographs of children involved in sexually explicit conduct. Musslyn was selected as a person to receive this brochure because of his history of correspondence with the postal service indicating his involvement with child abuse and his interest in child pornography and the fact that he entered a plea of guilty in September of 1986 to charges arising out of an incident where Musslyn was photographed having oral sex with a 13–year–old girl.

Upon receiving the brochure Musslyn ordered four packets of photographs: Incest No. 1; School Girls and Boys; Lolita Color Special No. 14; Life Boy No. 6. Musslyn indicated that if the ordered sets were not available, substitutes could be made as follows: Nymph Lover No. 6; Loving Children No. 3; and Lollipops No. 2. Musslyn also inquired about the possibility of obtaining videotapes. Musslyn enclosed a check for $60 as payment for the photos.

On May 16, 1987, Musslyn sent a letter to Operation Borderline expressing concern that his check had not yet been cashed and requesting that the materials be sent. On June 24, 1987, a controlled delivery of a parcel containing the photograph sets ordered by Musslyn was made to Musslyn's residence in Raytown, Missouri. After the controlled delivery, a search warrant was obtained and executed on Musslyn's residence. In addition to the delivered photographs, other evidence was seized, including other photographs, a person-to-person directory containing the caption, "An Adult Perspective of the Development Nymphet," and which contained, "Personal Ads, Pictures, Letters, Humorous Stories, and the Mystique of Puberty Revealed Photographically Captured at that Tender Time by and for Private Collectors," and miscellanous papers and correspondence.

## II. OUTRAGEOUS GOVERNMENT CONDUCT DEFENSE

Musslyn contends that the nature and extent of the government's involvement in this crime was so overreaching and outrageous as to bar prosecution as a matter of due process of law because the government provided the illegal photographs to Musslyn. Musslyn also submits the investigation was unreasonable in length and that the government violated the law in the investigation by mailing the brochures and pictures to Musslyn. The Court finds that Musslyn's arguments are without merit.

The outrageous government conduct defense is not available to Musslyn because he was clearly predisposed to order child pornography and the government's agents involved only acted in concert with Musslyn's illegal request. Where government agents, government informants, and the defendant act in concert with one another, and the defendant has a predisposition to commit the crime in question, a violation of due process cannot properly be claimed. *Cf. Hampton v. United*

*States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (holding defendant may be convicted for sale of contraband which he procured from a government informant or agent). The remedy of the criminal defendant with respect to the acts of government agents which, far from being resisted, are encouraged by him, lies solely in the defense of entrapment. *Hampton,* 96 S.Ct. at 1650.

The resolution of whether the government's conduct was outrageous is a question of law for the Court to determine. *United States v. Irving,* 827 F.2d 390, 392 (8th Cir.1987). The outrageous government conduct defense is reserved for only "the most intolerable government conduct." *United States v. Esch,* 832 F.2d 531, 538 (10th Cir.1987). Government conduct is not outrageous simply because it may be somewhat offensive. *United States v. Goodwin,* 854 F.2d 33, 37 (4th Cir.1988) (involving a similar undercover sting operation to investigate illegal mailings of child pornography; the court held the government's conduct was not outrageous).

The Eighth Circuit has previously held that where a person is predisposed to commit an offense, "investigative officers and agents may go a long way in concert with the defendant without being deemed to have acted so outrageously as to violate due process...." *Irving,* 827 F.2d at 393.

Viewing the government's conduct in accordance with the standards set forth above, the Court finds that the government's conduct and participation in this case was not so outrageous or fundamentally unfair as to deprive Musslyn of due process of law. Similar undercover operations utilized by government agencies to investigate, catch, and convict child pornography collectors have withstood the constitutional challenge Musslyn now raises. *See United States v. Thoma,* 726 F.2d 1191 (7th Cir.) *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *United States v. Goodwin,* 854 F.2d 33 (4th Cir. 1988); *United States v. Esch,* 832 F.2d 531 (10th Cir.1987).

The government agents' involvement in this case, although substantial, was not so outrageous or fundamentally unfair as to bar Musslyn's prosecution and conviction. Musslyn was clearly predisposed to collect child pornography and engage in sexual acts with children. The government acted only in concert with Musslyn's request. Nobody forced Musslyn to join CSF or to order the illegal materials. The government did nothing more than give Musslyn an opportunity to exercise his predisposition to collect child pornography. Steps taken by the government in its undercover sting operation are reasonable and not outrageous considering the nature of the crime. The nature of the production, distribution, and sale of child pornography itself justifies this type of undercover operation to be utilized against those who order it. Accordingly, this Court holds the government's conduct is not outrageous and did not violate Musslyn's right to fundamental fairness.

## III. THE SEARCH WARRANT

■ Musslyn also contends that the trial court erred in denying Musslyn's motion to suppress evidence obtained in violation of Musslyn's fourth amendment rights because the government created each and every element necessary to establish probable cause to search Musslyn's home. Musslyn argues that it was the government who selected the photographs which ultimately were sent to him and had the government chosen photographs of adults, it would have been unable to secure a warrant to search Musslyn's home. The Court finds this argument to be totally unsupported in law or common sense. Musslyn did not order pictures of adults. He ordered child pornography. His actions created the probable cause. The district court properly considered Musslyn's arguments and stated in court:

There is no evidence that the government in any way imposed its will on the defendant. The invitation was extended. The defendant had several options, one of which was to have thrown the material in the waste basket, but the defendant chose to accept the invitation without

any pressure or badgering from the government. Probable cause was created by the defendant's actions on this record voluntarily engaged in, not by the government.

The Court finds the government's actions were not overreaching and that the district court was correct in denying Musslyn's motion to suppress evidence. Accordingly, Musslyn's conviction is upheld and the district court is affirmed.