869 F.2d 595
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Phillip David SWANGER, Defendant-Appellant.
 No. 88-5536.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 4, 1988.
Decided: Feb. 15, 1989.
 
 J. Steven Brackett (H. Kent Crowe, Rudisill & Brackett, P.A., on brief), for appellant.
 Max Oliver Cogburn, Jr., Assistant United States Attorney (Thomas J. Ashcraft, United States Attorney, on brief), for appellee.
 Before ERVIN, Circuit Judge, BUTZNER, Senior Circuit Judge, and JACKSON L. KISER, U.S. District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The defendant, Phillip Swanger, appeals his conviction of receiving child pornography through the mail in violation of 18 U.S.C. Secs. 1461 and 2252(a)(2). Swanger contends that the government's sting operation was so outrageous that it violated due process. Swanger also argues that his sentence of two years in prison was excessive. Finding no error, we affirm.
 
 I.
 
 2
 This case arises from a government sting operation started in 1985. Postal Inspector James Charlton sent out letters to people on mailing lists seized in 1980 and 1981 during other child pornography investigations. Charlton's letters purported to be marketing pornography from a fictional company named F & H Associates.
 
 
 3
 On May 13, 1985, Charlton sent Swanger such a letter, including a preference sheet to be returned. Swanger returned the preference sheet, indicating his interest in movies and videotapes of child-child and child-adult sexual activities.
 
 
 4
 There was more correspondence between Swanger and Charlton. On July 12, 1985, Swanger requested a catalog. Charlton sent a reply, promising a catalog later. On September 19, 1985, Charlton sent a newsletter to Swanger. In one section, the newsletter noted, "We must say we don't plan to do anything illegal ourselves and know our readers don't either, but in this day and age, who knows what is legal and what isn't." In another section, the newsletter described several examples of child pornography arrests and commented:
 
 
 5
 In this age of renewed gestapo tactics by our government, there will always be new traps being developed to get you.... I guess these cops don't believe in the U.S. Constitution because it guarantees us the absolute right to not be censored and to be secure in our homes.... The Constitution and the First Amendment to the Constitution guarantee your freedom, and you are going to have to fight the government to maintain these rights.
 
 
 6
 Swanger again requested a catalog on September 24, 1985. Charlton did not respond to this request until 1986, because Charlton had not yet prepared a catalog. On August 26, 1986, Charlton finally sent Swanger a catalog of adult pornography, which included a listing for another catalog, the "Kinder Climax Collection," of child pornography. Swanger ordered this catalog on August 28, 1986, and Charlton sent Swanger the catalog on September 2, 1986.
 
 
 7
 On September 5, 1986, Swanger ordered two tapes from the Kinder Climax catalog advertised as containing explicit scenes of sexual activity between adults and children. Swanger included his payment of $80 in the form of a postal money order.
 
 
 8
 Because he did not receive his order promptly, Swanger wrote twice to find out why his videos had not been sent. The first letter, dated September 30, 1986, stated in pertinent part:
 
 
 9
 On Friday, September 5th, I mailed in an order along with one eighty dollar money order. As of yet I have not received any items. Please advise.
 
 
 10
 In response, Charlton sent Swanger a form letter saying that because F & H was swamped with orders, it would take time for everyone to receive materials. On November 12, 1986, Swanger sent another letter, stating,
 
 
 11
 On September 1st, I ordered eighty dollars' worth of VHS tapes from you, paid by money order. Ten weeks later I have not received anything. Will the order be forthcoming or a refund? Thank you.
 
 
 12
 On November 21, 1986, the two pornographic videotapes were delivered to Swanger by United States mail, and Swanger was arrested.
 
 II.
 
 13
 Swanger argues that several elements of Charlton's sting operation made the government's conduct "outrageous," in violation of due process. Generally, we note that this court recently has approved very similar operations. See, e.g., United States v. Dornhofer, 859 F.2d 1195 (4th Cir.1988); United States v. Goodwin, 854 F.2d 33 (4th Cir.1988).
 
 
 14
 Swanger argues that this case is particularly outrageous because the government sent Swanger a newsletter purporting to advise him that child pornography was legal. This is not a case, however, where the defendant thought he was relying on the assurances of a government agent. See, e.g., Cox v. Louisiana, 379 U.S. 536 (1965). In contrast, Swanger had no reason to believe that the references to the Constitution in the newsletter were anything more than the self-serving statements of a purveyor of pornography--especially in the context of the newsletter's repeated descriptions of actual arrests.
 
 
 15
 Nor was the government's reliance on old mailing lists seized from child pornographers a violation of due process. Even though the government did not know how Swanger's name came to be on a child pornographer's mailing list, the presence of Swanger's name on such a list gave the government a good faith basis for sending out the initial mailing to Swanger. Swanger responded quickly to the bait, and he persisted in a correspondence that finally led to his ordering and receiving illicit materials.
 
 
 16
 Swanger contends that he tried to back out before the government mailed him the materials he ordered. Swanger argues that when he asked, "Will the order be forthcoming or a refund," the government should have responded by sending Swanger a refund. But it is clear that Swanger's request for either the materials or his money back was an attempt to get what he ordered by putting on pressure. Perhaps Swanger had begun to believe he was being cheated out of his money. In any event, Swanger did not simply demand his money back. The government, given two alternatives, chose the first one and sent Swanger what he ordered. Such conduct simply is not outrageous. This case is clearly distinguishable from such cases as Greene v. United States, 454 F.2d 783 (9th Cir.1971), where the government encouraged bootleggers to go back into business and acted as the only customer for two-and-a-half years.
 
 
 17
 Finally, although Swanger argues that his sentence of two years was excessive, he presents no evidence to justify overturning the sentence, which was well within the statutory maximum. See United States v. Legrano, 659 F.2d 17 (4th Cir.1981). The sentence was proper, and we have no reason to reverse.
 
 Accordingly, the judgment and sentence are
 
 18
 AFFIRMED.