**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Horace CHAVIS,**
**Defendant–Appellant. (Two Cases)**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clement CHAVIS, Defendant–Appellant.**

**Nos. 88–7208, 88–5092, 88–5093.**

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1989.

Decided July 24, 1989.

James R. Nance, Jr. (Nance, Collier, Herndon, Jenkins & Wheless, Fayetteville, N.C., on brief), Evander Munn Britt, Sr. (Britt & Britt, Lumberton, N.C., on brief), for defendant-appellant.

Mervyn Hamburg, Washington, D.C., (Margaret P. Currin, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

DOUMAR, District Judge:

Horace Chavis was convicted by a jury of operating a continuing criminal enterprise, in violation of 21 U.S.C. § 848; conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846; distributing cocaine to a person under twenty-one years of age, in violation of 21 U.S.C. § 845(a); and carrying a firearm while conducting drug trafficking, in violation of 18 U.S.C. § 924(c)(1). Clement Chavis was convicted of conspiracy to possess cocaine with intent

to distribute and of carrying a firearm while conducting drug trafficking. Horace and Clement appeal from these convictions.

Clement asserts that the district court improperly admitted into evidence a handgun taken from the automobile that he was operating at the time of his arrest. The handgun was discovered during the course of a warrantless station house search of the vehicle. Clement also claims error in the district court's refusal to grant a mistrial following the failure of a paid government informant to return to the trial for further testimony after having contacted defense counsel and others and suggesting that he possessed additional evidence. Horace assigns error to the district court charging the jury on both continuing criminal enterprise and conspiracy to possess cocaine with intent to distribute based on his assertion that he could not properly be convicted of both crimes. Horace further asserts that the district court abused its discretion in failing to suppress the testimony of a paid government informant in a reverse sting operation and to charge the jury on entrapment.

Finding no error in the district court proceedings, we affirm.

I

Prior to his arrest in this case, Horace Chavis successfully operated a cocaine distribution enterprise from his home in rural Maxton, North Carolina. Beginning in 1986, Horace began moving cocaine in multi-ounce quantities. By September 1986, Horace was purchasing cocaine in kilogram quantities. Horace stored the cocaine on his own property or on the nearby property of his parents. Customers typically came to Horace's home to purchase cocaine. On occasion, Horace utilized his minor son to retrieve or to distribute packets of cocaine. If Horace was not at home when customers stopped by, Clement would handle the cocaine transactions.

In April 1987, Willie Campbell, one of Horace's steady customers, was arrested after selling cocaine that he had purchased from Horace to an undercover detective. Following his arrest, Campbell agreed to cooperate with law enforcement officers. Under law enforcement surveillance, Campbell, Horace, and on occasion Clement discussed further drug transactions and Horace providing Campbell with cash and free cocaine for resale in order for Campbell to retain an attorney to represent him on his pending charges. A two-ounce cocaine transaction between Horace and Campbell led to Horace's first arrest, on July 20, 1987. The arresting officer discovered a loaded handgun on the front seat of the automobile that Horace was driving. A consensual search of Horace's home located some $3,000 in cash and two additional firearms. In addition, Horace led police officers to a pump house on his parents' property where he had concealed three one-ounce bags of cocaine.

Following his arrest, Horace notified law enforcement officials that he wished to cooperate. Horace related to them the names of some of his customers and discussed his cocaine sources. A bond reduction hearing was held and Horace was released on bail pending trial. While on bail, however, Horace continued to purchase and to distribute cocaine.

In September 1987 Richard Bell was employed as a member of a construction crew installing siding on Horace's parents' home. Upon noticing the stream of traffic at the residence, Bell revealed to Horace that Bell's father had been engaged in drug trafficking in Florida for many years. Bell and Horace discussed a delivery of three kilograms of cocaine from Bell's father to Horace. Horace told Bell that he was distributing two or three kilograms of cocaine every two weeks and that if Bell's price was attractive, they could repeat such a delivery every other week.

Although at first Bell contemplated brokering cocaine between his father and Horace, he subsequently changed his mind. Bell contacted the local sheriff's department, relating his willingness to assist in a reverse sting operation for a fee. This information was relayed to the North Carolina Bureau of Investigation and a state officer was assigned to arrange an undercover transaction through Bell.

As instructed by the state officer, Bell quoted a selling price of $21,000 per kilogram to Horace through Clement. Over the next two or three days, Bell discussed the details of the proposed three kilogram transaction with both Horace and Clement. On the morning of September 30, Bell arranged for a meeting that afternoon between Horace or Clement and an undercover officer acting as a distributor's representative. Clement met the undercover officer, discussing the cocaine's low price, the possibility for future sales, and the approximately two to three kilogram biweekly volume of Clement's distribution. Clement and the undercover officer agreed to meet later that evening at a welcome center on Interstate 95 to consummate the transaction.

At the agreed upon time and location, Clement arrived alone by automobile with a bag containing $58,000 in cash. The undercover officer placed a bag containing three kilograms of cocaine on the passenger seat of the car and received the money. Clement was immediately arrested. The arresting officers seized the car upon Clement's arrest. A crowd began to gather. The officer in charge of the scene directed an officer to drive the automobile to the highway patrol station some fifteen miles away. Clement was also taken to the station for processing. Approximately two hours later a warrantless search of the vehicle was conducted at the station house prior to impounding the vehicle for possible forfeiture. During the course of this search a .38 caliber handgun was discovered under the front passenger seat of the car.

## II

■ At trial, Clement objected to the introduction of the handgun. The district court held a suppression hearing and at its conclusion admitted the handgun into evidence. The district court found that the station house search was valid under the fourth amendment based on the vehicle having been seized for forfeiture at the time of Clement's arrest and the officers having searched the car as soon as manpower became available to do so.

Clement does not contest the legality of the seizure and impoundment of the automobile for possible forfeiture. His fourth amendment argument is that the station house search does not fall into any of the exceptions to the general warrant requirement. We disagree.

It is well recognized that where law enforcement officers possess probable cause to search an automobile at the scene of an arrest, a warrant is not required for a subsequent station house search of the vehicle. *See Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Muhammad,* 658 F.2d 249 (4th Cir.1981), *cert. denied,* 456 U.S. 947, 102 S.Ct. 2015, 72 L.Ed.2d 470 (1982); *United States v. Chulengarian,* 538 F.2d 553 (4th Cir.1976). The Supreme Court has made it abundantly clear that neither the passage of several hours between the arrest and the search nor the immobilization of the vehicle by placing it in police custody invalidates the probable cause basis for conducting a warrantless automobile search. *See Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984); *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

The district court found that there was probable cause to search the automobile at the scene of Clement's arrest. This finding is amply supported by the evidence and validates the station house search.

■ During the course of the meeting between Clement and the undercover officer at which the time and welcome center site for the three kilogram cocaine transaction were agreed upon, Clement related to the officer the substantial volume of his cocaine distribution enterprise. This discussion corroborated information that agents had received from Campbell following Horace's release on bail. The arresting officers knew that Horace and Clement were not small-time distributors. By the terms of the agreement for the three kilogram undercover transaction, Clement was to arrive at the welcome center with $63,000 in cash. The arresting officers had

sufficient factual knowledge to form a probable cause belief that the automobile in which Clement arrived contained contraband or the fruits of cocaine distribution.

Additionally, the arresting officers knew sufficient facts to form a probable cause belief that Clement would bring a weapon to the welcome center transaction site. At the time of Horace's prior arrest, a loaded handgun was on the front seat of the car from which he was arrested. At the close of the meeting between Clement and the undercover officer at which the details of the welcome center transaction were arranged, Clement threatened the undercover officer in the event any problems arose. The totality of these circumstances provided the arresting officers with probable cause to believe that Clement would have contraband or the fruits or instrumentalities of his cocaine trafficking, i.e., cocaine, cash, or weapons, under his control within the car. *See United States v. $29,000— U.S. Currency*, 745 F.2d 853, 854–855 (4th Cir.1984); *United States v. Whitley*, 734 F.2d 994, 998–999 (4th Cir.1984), *cert. denied*, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed. 2d 164 (1985). The district court properly refused to suppress the handgun discovered during the course of the station house search.[1]

### III

#### A.

At trial, the government called Richard Bell to the stand. On direct examination he testified concerning his discussions with Horace and Clement which ultimately led to Bell introducing Clement to the undercover officer and the three kilogram sting transaction. Cross-examination revealed that Bell had received $6,000 for his role in assisting the police with this transaction. When his examination had been completed, the district court discharged Bell.

Over the next several days, Bell contacted by telephone counsel for Horace, Clem-

ent himself, the prosecutor, and the law enforcement case agent. His goal was to obtain additional money from the government. Horace's defense counsel reported to the district court that Bell told him that he had exculpatory evidence which he would reveal unless the government paid Bell additional compensation. The prosecutor reported to the district court that Bell told him that the evidence did not affect the guilt or innocence of the defendants, only Bell's credibility. Over the course of the numerous calls from Bell, defense counsel obtained a subpoena requiring Bell's return to court and Bell was apprised that the court, as well as defense counsel, was requiring his return. Bell never disclosed his whereabouts, however, and the United States Marshals were unsuccessful in locating him for service of the subpoena. Despite these efforts and the prosecutor advising Bell that if he failed to return to court the prosecutor could initiate a grand jury investigation for obstruction of justice, bribery, or extortion, Bell did not return. He also never disclosed the substance, if any, of his "evidence." Based on Bell's nonreturn, Clement moved for a mistrial. Clement asserts on appeal that the district court's refusal to order a new trial abridged his sixth amendment confrontation and compulsory process rights. Additionally, Clement analogizes his situation to a post-trial request for a new trial based on newly discovered evidence. Both arguments are unavailing.

■ With regard to the sixth amendment argument, we reject Clement's portrayal of the government as the party responsible for Bell's conduct and for his nonreturn. Defense counsel, the district court, and the prosecutor all took affirmative action to obtain Bell's return to court. The government attempted to locate Bell and to serve the subpoena prepared at the court's direction. All of these efforts proved unsuccessful, but Bell's nonreturn cannot be attributed to the government. The actions taken by the government to procure Bell's

---

1. We need not determine whether the station house search was valid as an inventory search under *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and its

progeny, or the applicability to this case of the forfeiture rationale utilized to validate the automobile search in *$29,000*, 745 F.2d at 855–856.

return after he had been discharged as a witness were reasonable efforts under the circumstances. Prior to Bell's discharge, the defendants had a full and fair opportunity to cross-examine Bell and thoroughly did so. Clement's sixth amendment rights were not abridged by Bell's nonreturn.

■ In determining whether a new trial should be granted under Rule 33 of the Federal Rules of Criminal Procedure on the basis of newly discovered evidence, this circuit utilizes a five-part test: (i) is the evidence, in fact, newly discovered; (ii) are facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial? *United States v. Bales*, 813 F.2d 1289, 1295 (4th Cir.1987). Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate.

■ Assuming for purposes of analysis that Bell actually did possess additional evidence and that this evidence properly could be considered "newly discovered," we do not find that this evidence would probably result in an acquittal of either Clement or Horace at a new trial. The evidence of their guilt from witnesses other than Bell, including the testimony of Campbell and other co-conspirators, was overwhelming. The district court properly denied Clement's motion for mistrial.

### B.

■ Horace also has problems with Bell. He argues that the district court abused its discretion in denying Horace's untimely motion to suppress Bell's testimony on the grounds that the government's paid use of Bell to arrange the three kilogram sting transaction and to testify at trial constituted outrageous government conduct in violation of the due process clause of the fifth amendment.

In *United States v. Goodwin*, 854 F.2d 33 (4th Cir.1988), the panel of this Court pointed out that any analysis of a due process argument based on the government's conduct in a reverse sting operation begins with *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). 854 F.2d at 36. In *Hampton*, a divided Supreme Court rejected the defendant's due process claim advanced against the government having posed as both the supplier and the buyer of the heroin which the defendant was convicted for selling. The *Goodwin* panel explained that *Hampton* did not eliminate the outrageous government conduct defense, but made it clear that a due process violation exists only where official conduct is not simply offensive, but is truly outrageous. 854 F.2d at 37.

This circuit has previously found reverse sting operations involving contraband not to constitute outrageous government conduct. *See Goodwin*, 854 F.2d at 37; *United States v. Milam*, 817 F.2d 1113, 1116 (4th Cir.1987). In *United States v. McCaghren*, 666 F.2d 1227, 1230–31 (8th Cir. 1981), the Eighth Circuit rejected the argument that the use of an informant who was subsequently paid by the government for arranging a sting drug transaction between willing, bulk buyers and law enforcement officers was demonstrably outrageous or fundamentally unfair. We reject the argument here too.

The three kilogram sting transaction in this case was in no way "manufactured" by the government. After having observed the activities at the Chavis home on which Bell was working, Bell suspected that Horace was distributing drugs. Horace, Clement, and the government all agree that Bell was well connected to drug distributors and apparently was experienced in this criminal enterprise. After learning that Horace and Clement were interested in buying cocaine in multiple kilogram quantities, Bell initially considered brokering this cocaine between his father and the appellants. Only after concluding that he did not wish to himself become involved in supplying cocaine to Horace and Clement did Bell contact law enforcement officers to inform them of the appellants' interest in purchasing cocaine in bulk. Unlike *United*

*States v. Twigg,* 588 F.2d 373, 381 (3d Cir. 1978), the illegal activity in this case was not generated by government agents. The reverse sting in this case is in no way comparable to the full loop transactions in *United States v. West,* 511 F.2d 1083, 1085 (3d Cir.1975), where one government agent supplied narcotics to the defendant and persuaded him to sell them, as had been prearranged, to another government agent. Horace's reliance on these cases is unavailing.[2]

In *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Supreme Court found that the government's use of a paid informant to testify at trial does not violate the due process clause of the fifth amendment. The Court suggested that disclosure of the relationship between the government and the informant, cross-examination, and a properly instructed jury protect the truth-finding process. 385 U.S. at 311–12, 87 S.Ct. at 418–19, 17 L.Ed.2d at 387–88. In this case, Bell's compensation was fully disclosed, he was subjected to rigorous cross-examination, and the jury was instructed to consider the testimony of a paid informant, that is Bell, with caution. There is nothing to suggest that he perjured himself on the witness stand. Accordingly, the district court properly permitted Bell to testify.

## IV

Lastly, Horace challenges the district court's jury charge on two grounds. Horace first argues that instructing the jury on both the continuing criminal enterprise and the conspiracy to possess cocaine with intent to distribute charges without explaining to the jury that they could not convict on both charges constituted reversible error. Finally, Horace argues that the court erred in not including an entrapment instruction in its jury charge. Both of these challenges are without merit.

Initially, we observe that Horace failed to raise these objections in the district court under Rule 30 of the Federal Rules

of Criminal Procedure. Accordingly, the plain error standard of review is applicable to these alleged errors. Fed.R.Crim.P. 52(b); *United States v. Cohen,* 617 F.2d 56, 58 (4th Cir.), *cert. denied,* 449 U.S. 845, 101 S.Ct. 130, 66 L.Ed.2d 55 (1980).

██ The error alleged in declining to instruct the jury that they could not convict Horace on both the 21 U.S.C. section 848 continuing criminal enterprise charge and the 21 U.S.C. section 846 conspiracy to possess with intent to distribute charge is simply nonexistent. In *United States v. Ricks,* 802 F.2d 731, 737 (4th Cir.) (en banc), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986) the en banc court held that a defendant may properly be convicted at the same trial for violation of both sections 848 and 846 and that the section 846 conviction may constitute one of the three narcotics violations necessary for conviction under section 848.

██ Finally, the district court's not including an entrapment instruction was entirely proper. Horace did not advance this affirmative defense, and we do not find sufficient evidence from which a reasonable jury could have found either government inducement of the offenses for which Horace was charged or a lack of predisposition on Horace's part to engage in the criminal conduct. See *Mathews v. United States,* 485 U.S. 58, ——, 108 S.Ct. 883, 886, 99 L.Ed.2d 54, 61 (1988).

Finding no error in the district court proceedings, the appellants' convictions are

AFFIRMED.

---

**2.** Both *Twigg* and *West* are questioned in *United States v. Beverly,* 723 F.2d 11, 12 (3d Cir.1983) as possibly inconsistent with *Hampton.*