888 F.2d 1387
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Lee FLEMING, Defendant-Appellant.
 No. 88-5113.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 4, 1989.
Decided Oct. 25, 1989.
 
 Charles O. Peed, Jr. Badgett, Dalaway, Phillips, Davis, Stevens & Peed, David F. Tamer on brief for appellant.
 Robert H. Edmunds, Jr., United States Attorney, Harry L. Hobgood, Assistant United States Attorney, on brief for appellee.
 Before PHILLIPS, SPROUSE, and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this appeal, Thomas Lee Fleming raises a due process challenge to the police "sting" operation which led to his convictions for possessing marijuana with intent to distribute and carrying a firearm during a drug trafficking crime. Finding no merit in his appeal, we affirm.
 
 
 2
 * The facts of Fleming's case follow a familiar pattern. The sting which culminated in his arrest was arranged with the help of an informant. Lisa Loflin knew Fleming from numerous marijuana-buying excursions to 18th Street in Winston-Salem, North Carolina. When she told police that Fleming was looking for a new source of marijuana, Detective Jerry Hobbs gave Loflin his undercover alias and pager number, and asked her to see if Fleming would like to make a buy.
 
 
 3
 On January 21, 1988, the detective returned a pager message and spoke to Loflin, who put Fleming on the telephone. Hobbs stated he had four pounds of marijuana for sale; he and Fleming negotiated over the price. They later agreed to meet at a motel that evening to transact the deal. Hobbs then withdrew three kilograms of previously-confiscated Jamaican marijuana from the police evidence vault. Officers installed surveillance equipment in a motel room and took up posts next door and outside. Hobbs waited with a female agent, who posed as his girlfriend.
 
 
 4
 When Fleming and Loflin arrived, Hobbs asked Loflin to leave and searched Fleming. Fleming placed a revolver and $2,404.72 on the bed and examined the marijuana, inquiring whether it was Jamaican. They agreed the cash Fleming had brought would cover the purchase price. Fleming told Hobbs he had paid up to $1,200 a pound for marijuana, could sell three to five pounds a day, and needed a regular supply. Fleming then left the room with his gun and a bag containing the marijuana. He was arrested outside.
 
 
 5
 Fleming was indicted on one count of possessing marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and one count of carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1). He pleaded not guilty and moved to dismiss the indictment on the grounds of entrapment, due process, and "impossibility." The trial court denied the motion, and said it would be treated under Fed.R.Crim.P. 29 at trial. At the close of the government's case, Fleming moved for acquittal on the grounds of entrapment and "illegal overreaching." The court took the motion under advisement, and denied it after the jury returned a guilty verdict on both counts. Fleming was sentenced to five years imprisonment on the firearm count, to be served consecutively with sixteen months on the possession count, plus two years supervised release and a $50 assessment on each charge. Fleming contends the district court erred in denying his motion for acquittal and dismissal of the indictment.
 
 II
 
 6
 Fleming argues on appeal that the government's conduct violated the fundamental fairness mandated by the due process clause of the fifth amendment. United States v. Russell, 411 U.S. 423, 432 (1973). Specifically, Fleming contends that "the genesis of the entire transaction was to be found in the recesses of the Forsyth County Sheriff's Department." He asserts Loflin was bullied into cooperating with lawmen who threatened her with prosecution and coerced her into becoming his girlfriend. Fleming insists the outrageousness of police conduct in his case offends due process.
 
 
 7
 The Supreme Court recognized the possibility of an outrageous conduct/due process defense in Russell, but rejected the argument there where an undercover narcotics agent had supplied a key ingredient to illegal drug manufacturers:
 
 
 8
 While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed.
 
 
 9
 411 U.S. at 431-32 (citation omitted). The Court also rejected such a defense in Hampton v. United States, 425 U.S. 484 (1976), where the petitioner was prosecuted for selling heroin to an undercover agent.
 
 
 10
 Similarly, this court has yet to encounter a case in which government activity was sufficiently outrageous to support a due process argument. Last year in United States v. Goodwin, 854 F.2d 33 (4th Cir.1988), we affirmed a child pornography conviction produced by a government sting in which authorities established an undercover child pornography mail order firm, and sent correspondence, catalogs, and ultimately pornographic materials to suspects identified as being predisposed towards child pornography. We explained:
 
 
 11
 Hampton did not eliminate the outrageous conduct defense, but it did make clear that a due process violation exists only when the official conduct is outrageous, not simply offensive. Outrageous is not a label properly applied to conduct because it is a sting or reverse sting operation involving contraband.
 
 
 12
 Goodwin, 854 F.2d at 36-37 (footnote and citation omitted, emphasis added); see also United States v. Chavis, 880 F.2d 788, 793-94 (4th Cir.1989); United States v. Milam, 817 F.2d 1113, 1114-16 (4th Cir.1987); United States v. Akinseye, 802 F.2d 740, 743 n. 2 (4th Cir.1986), cert. denied sub nom. Ayodeji v. United States, 482 U.S. 916 (1987); United States v. Hunt, 749 F.2d 1078, 1087-88 (4th Cir.1984), cert. denied, 472 U.S. 1018 (1985); accord United States v. Wiley, 794 F.2d 514, 515-16 (9th Cir.1986) (Kennedy, J.); United States v. Jannotti, 673 F.2d 578, 606-10 (3d Cir.) (en banc), cert. denied, 457 U.S. 1106 (1982); United States v. McCaghren, 666 F.2d 1227, 1230-31 (8th Cir.1981). Compare Greene v. United States, 454 F.2d 783 (9th Cir.1971), with Wiley, 794 F.2d at 516, and United States v. Twigg, 588 F.2d 373 (3d Cir.1978), with United States v. Beverly, 723 F.2d 11 (3d Cir.1983).
 
 III
 
 13
 Here, the record demonstrates that Fleming was predisposed to engage in drug trafficking. Loflin, who appeared as a defense witness, testified to meeting Fleming during trips to buy marijuana. Law enforcement officials set up the sting only after receiving evidence that Fleming was interested in finding a new marijuana supplier. At the time of the transaction, Fleming submitted to being patted down. He examined the marijuana and identified it as Jamaican. Clearly, Fleming was not ensnared in a "trap for the unwary innocent." Sherman v. United States, 356 U.S. 369, 372 (1958); see also Hampton, 425 U.S. at 488-90 & 495 n. 7. Nor do we find merit in Fleming's contention that the government's use of previously-confiscated marijuana was outrageous. As the Supreme Court explained in Russell:
 
 
 14
 [I]n drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must, as a general rule, also be permissible.
 
 
 15
 411 U.S. at 432. Finally, the informant Loflin's role in the probe adds nothing to Fleming's outrageous conduct argument. See Chavis, 880 F.2d at 794.
 
 
 16
 As the Tenth Circuit observed in United States v. Gamble, 737 F.2d 853, 857 (10th Cir.1984), "The defense that the government's conduct was so outrageous as to require reversal on due process grounds is often raised but is almost never successful." Here again, the government's conduct did not reach the level of outrageousness amounting to a due process violation. We dispense with oral argument because the facts and legal arguments are adequately presented in the materials before the court, and oral argument would not significantly aid the decisional process.
 
 
 17
 AFFIRMED.