33 F.3d 53
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby HAZEL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Homer RICHARDS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby HAZEL; Homer Richards, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby HAZEL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Homer RICHARDS, Defendant-Appellant.
 Nos. 93-5659, 94-5272, 93-5660, 94-5285, 94-5208.
 United States Court of Appeals, Fourth Circuit.
 Argued June 10, 1994.
Decided August 16, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-93-62-A)
 Argued: Peter Neil Mann, Washington, D.C., for appellant Hazel;
 Argued: John M. Tran, Greenberg, Bracken & Tran, Alexandria, VA. On brief: Cary S. Greenberg, Greenberg, Bracken & Tran, Alexandria, VA, for appellant Richards.
 Argued: John T. Martin, Asst. U.S. Atty., Office of the United States Attorney, Alexandria, VA. On brief: Helen F. Fahey, U.S. Atty., Cathleen A. Tutty, Sp. Asst. U.S. Atty., Office of the United States Attorney, Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, HALL and HAMILTON, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 On February 11, 1993, a federal grand jury sitting in the Eastern District of Virginia returned a three-count indictment against Bobby Hazel and Homer Richards. Count one charged Hazel and Richards with first degree murder, 18 U.S.C. Secs. 1111 and 2, for the killing of Gregory Ford. The indictment also charged Hazel (count two) and Richards (count three) with possession of a dangerous weapon, 18 U.S.C. Sec. 13 (assimilating Va.Code Ann. Sec. 52.1-203(4)). On May 19, 1993, a jury found Hazel guilty of first degree murder and Richards guilty of the lesser included offense of second degree murder. In addition, the jury returned verdicts of guilty on counts two and three. The district court sentenced Hazel to life imprisonment and Richards to 235 months' imprisonment. Hazel and Richards noted timely appeals. On November 26 and December 6, 1993, respectively, Hazel and Richards filed motions for new trials based on newly discovered evidence. See Fed.R.Crim.P. 33. On December 17, 1993, the district court denied the motions, and Hazel and Richards noted timely appeals. On March 18 and 21, 1994, respectively, Hazel and Richards filed another series of motions for new trials based on additional alleged newly discovered evidence. The district court denied these motions and Hazel and Richards noted another set of appeals. We consolidated the various appeals on April 12, 1994 and now affirm.
 
 
 2
 * The facts of this case concern the murder of inmate Gregory Ford at the Lorton Reformatory, which is located at Lorton, Virginia, within the Eastern District of Virginia. The defendants and the material witnesses proffered by the government were also inmates at the Lorton Reformatory on the day Ford was killed.
 
 
 3
 Thomas Dinsmore testified that in May 1992 Richards told him that Ford owed Richards money and that Richards indicated that he was going to have to "hurt" Ford. (J.A. vol. 1 23). Thereafter, Richards and Hazel asked Dinsmore to hurt Ford in exchange for which a debt Dinsmore owed primarily to Richards would be erased.
 
 
 4
 David Basknight testified that on June 16, 1992, he heard an argument outside his room. As a result, Basknight hid behind a bed in the back of his room. Shortly thereafter, Basknight heard a body hitting the floor in his room. Basknight testified that he "stayed still for a while," (J.A. vol. 1 43), and then went to where Ford lay bleeding.
 
 
 5
 Two witnesses gave more damaging testimony. Travis Cameron testified that he saw Hazel and Richards stab Ford. Marshall Hollingsworth testified that he came upon the scene from a nearby stairwell and saw Hazel and Richards make aggressive hand motions toward Ford. Hollingsworth testified that he went back down the stairs and then returned, at which time Hazel and Richards were walking down the stairs past him. Hollingsworth continued up the stairs and saw Basknight standing over Ford.
 
 II
 
 6
 During Cameron's cross-examination, counsel for Hazel elicited from Cameron that he did not like Hazel and wanted to kill Hazel. On redirect examination, the government asked Cameron why he harbored these feelings toward Hazel, to which Cameron testified that Hazel had sexually assaulted him. The district court sustained an objection to the question, but denied the appellants' motion for mistrial. In ruling on post-trial motions for a new trial based in part on the alleged prejudice which resulted from this question, the district court held, in retrospect, that it believed the question was proper in light of the preceding cross-examination and that, in any event, there was no prejudice to either appellant. Hazel and Richards argue that the district court's denial of the motion for mistrial, as well as the subsequent new trial motions, constitutes reversible error. We disagree.
 
 
 7
 The question placed by the government to Cameron was proper in light of the preceding cross-examination. On cross-examination, counsel for Hazel probed extensively into Cameron's bias against Hazel, going so far as to establish that Cameron would like to kill Hazel. Because Hazel placed the issue of bias into the scope of cross examination, it was entirely appropriate for the government to establish on redirect examination why Cameron harbored such a bias against Hazel. In any event, even if the government's question on redirect examination was improper, any error was undoubtedly harmless.
 
 III
 
 8
 Hazel and Richards also contend that the district court erred in taking judicial notice of the fact that the Lorton Reformatory is in the special maritime and territorial jurisdiction of the United States. The appellants' argument is two-fold: first, they argue that the Lorton Reformatory is not within the special maritime and territorial jurisdiction of the United States; and second, they argue that, even if the Lorton Reformatory is within the special maritime and territorial jurisdiction of the United States, this was not properly the subject of judicial notice in the absence of supporting evidence from the government. We find no merit to these arguments.
 
 
 9
 We have previously held in a related context that the United States Sentencing Guidelines applied to crimes committed at the Lorton Reformatory, which is located in the Eastern District of Virginia. In reaching this ruling, we concluded "the United States District Court for the Eastern District of Virginia has original jurisdiction for crimes committed at Lorton Reformatory, which is located within that district, and this includes criminal charges for violation of the D.C.Code and also for violation of Virginia criminal laws assimilated by 18 U.S.C. Sec. 13." United States v. Young, 916 F.2d 147, 150 (4th Cir.1990). Following Young, crimes committed at the Lorton Reformatory fall within the special maritime and territorial jurisdiction of the United States.
 
 
 10
 We now turn to the argument that the district court erred in taking judicial notice of the fact that the Lorton Reformatory was within the special maritime and territorial jurisdiction of the United States. Fed.R.Evid. 201(b) provides:
 
 
 11
 A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 
 
 12
 We believe the district court properly took judicial notice that the Lorton Reformatory fell within the special maritime and territorial jurisdiction of the United States. It is beyond cavil that Lorton Reformatory's status was generally known in the Alexandria Division of the Eastern District of Virginia and capable of ready accuracy from "sources whose accuracy cannot be reasonably questioned." Id.*
 
 IV
 
 13
 Finally, Hazel and Richards argue that the district court erred in denying their motions for new trials based on newly discovered evidence. The appellants' motions for new trials were based on what they contended was the newly discovered testimony of five witnesses, submitted to the district court in the form of affidavits.
 
 
 14
 We have established a five-part test for evaluating motions for new trials. United States v. Chavis, 880 F.2d 788, 793 (4th Cir.1989). Under Chavis, Hazel and Richards must demonstrate: (1) that the evidence is newly discovered; (2) that there are facts alleged from which the court may infer due diligence on the part of the movant; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material to the issues involved; and (5) that the evidence would probably result in acquittal in a new trial. Id. The burden of persuasion rests with the movant. The district court's denial of a motion for new trial based on newly discovered evidence should not be disturbed absent an abuse of discretion. United States v. Plum, 558 F.2d 568, 576 (10th Cir.1977).
 
 
 15
 We shall briefly summarize the affidavits of the five witnesses proffered by the appellants. Jefferey Wells provided a sworn statement that, prior to the day Ford was killed, Ford assaulted Basknight and that Basknight and Ford had spoken on the day Ford was killed. Wells went on to say that, after lunch, he observed Ford and Bask night arguing and saw Cameron retrieving a shank from a room. Wells further stated that he then left the dorm in order to obtain a weapon, for his own protection, and, upon returning to the dorm, saw Cameron running away with a bloody knife and saw Ford on the floor. Wells concluded by saying that he never saw either defendant in the dormitory that day. The motions for new trials indicate that Hazel acknowledged that counsel had spoken to Wells prior to trial but states that Wells then said he had witnessed none of the events surrounding the killing of Ford.
 
 
 16
 Wiggins' affidavit states that, prior to calling correctional officers to report Ford's injury, he saw Cameron pull Ford's body from Basknight's room to a common area of the dorm, and at that time Cameron had "blood splattered all over his shirt." (J.A. vol. 2 60). Wiggins' affidavit also indicates that in prior interviews with defense attorneys and the Federal Bureau of Investigation (FBI) Wiggins denied having knowledge of these events.
 
 
 17
 The affidavits of both Carlisle Gore and Edward Ford (no relation to the victim) state that Basknight stated in their respective presence that he was a defendant in the murder trial, that he killed Gregory Ford, and that he was not convicted because of a lack of evidence.
 
 
 18
 Finally, the affidavit of Donald Johnson states that he saw Cameron attack a person with a knife in the hallway and back that person into Basknight's room. Johnson's affidavit also states that Cameron allegedly went into the room. Following these events, Basknight purportedly left the room, returned with a mop and bucket, and reentered the room. Finally, Johnson's affidavit states that he told the FBI that he was not aware of what had happened.
 
 
 19
 We believe the affidavits submitted below, examined individually or cumulatively, did not warrant a new trial. Assuming that the evidence presented by Hazel and Richards is new, material, and could not have been discovered with due diligence, the evidence is merely additional impeachment of the testimony of Basknight, Cameron, and Hollingsworth. The evidence, therefore, fails to meet the third prong of the Chavis standard--that the evidence not be merely cumulative or impeaching. The evidence also fails to meet the final prong of the Chavis standard. We glean from our review of the record that this evidence, if presented on retrial, would not probably result in acquittal in light of the strength of the government's case. As the district court noted: "[T]his was not a close case. Retrial, even with the added witnesses the defendants now proffer, would not probably produce a different result." (J.A. vol. 1 82). We agree.
 
 AFFIRMED
 
 
 *
 We also find no merit to the appellants' contention that the district court erred in instructing the jury with respect to the element of federal jurisdiction