955 F.2d 42
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie M. COX, Defendant-Appellant.
 No. 90-5853.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 30, 1991.
Decided Feb. 20, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert v. Bryan, Jr., Senior District Judge. (CR-90-250)
 Alan H. Yamamoto, Fairfax, Va., for appellant.
 Henry E. Hudson, United States Attorney, Gordon D. Kromberg, Special Assistant United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL, WILKINSON and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Willie M. Cox appeals his conviction and sentence for violations of 18 U.S.C. §§ 922(g), 924(e)(1), 21 U.S.C. § 844, and Va.Code Ann. § 54.1-3466, assimilated by 18 U.S.C. § 13. Finding no error in the district court's denial of his suppression motion or in the judgment and sentence he received, we affirm.
 
 
 2
 The facts in this case are not significantly in dispute. On June 10, 1990, Cox was subjected to an investigatory stop by the United States Park Police while traveling on the George Washington Memorial Parkway in Arlington, Virginia. According to the testimony of the officers involved, Cox's automobile was stopped because it had old and weathered temporary identification tags which appeared to be altered. Cox was asked to produce his license and registration. He volunteered to the officers that he was driving on a suspended license and, that while he did not have the car's registration, he did have the bill of sale which would prove his ownership of the car.
 
 
 3
 The officers radioed Cox's social security number to their communications center and confirmed that Cox's license was in fact suspended. Thereafter, they placed Cox under arrest, handcuffed him, and placed him in the police cruiser.
 
 
 4
 While Cox was in the police car, the officers searched the passenger compartment of Cox's automobile. There they found drug paraphernalia, including the bottom of a soda can containing a white powder residue. The officer later testified that it appeared to have been used as a "cooker" to heat heroin and water to use for injections. The officers also found syringes. All of this was seized as evidence. One of the officers then asked Cox whether he was a heroin user. Cox replied that he was.
 
 
 5
 The officers radioed to their sergeant for an impoundment of the vehicle, based on the standard policy of impounding vehicles for which there is no proof of ownership. According to the officers' testimony, while they were waiting for the tow truck to arrive they conducted an inventory search of the interior of the car, including the passenger compartment and the glove compartment. The officers attempted to open the trunk with the key that was found in the ignition, to no avail. They asked Cox if he had a key, to which he replied in the negative. The tow truck arrived and Cox was transported to the police station.
 
 
 6
 Later that evening, the officers discovered a key on the floor of the passenger side of the police car in which Cox had ridden. The officers observed that the key resembled the ignition key to Cox's vehicle, which had been impounded. Early the next morning, the officers went to the lot where Cox's car was being stored and tried the key in the trunk; the key opened it. In the trunk, the officers found, among other things, a gym bag containing a loaded .38 caliber revolver.
 
 
 7
 Cox was found guilty of possession and interstate transportation of a firearm by a felon, possession of heroin, and possession of hypodermic syringes adapted for administration of a controlled substance. He was sentenced on the firearm charge pursuant to 18 U.S.C. § 924(3). Cox appeals his conviction based on the district court's refusal to suppress the evidence seized from his automobile. He also challenges his sentence based on his belief that he should have been sentenced pursuant to the guidelines range rather than the statutory minimum sentence under 18 U.S.C. § 924(e). For the reasons outlined below, we affirm the conviction and sentence as pronounced by the district court.
 
 
 8
 I. The initial search of Cox's car.
 
 
 9
 At the hearing on the motion to suppress, Cox argued, as he does on appeal, that the search of his car was not incident to a lawful arrest since the actual arrest did not take place until he was in the officers' car. Therefore, to search the car without a warrant required a finding of probable cause, which he contends the officers were unable to establish.
 
 
 10
 The law is well-established that officers may search the passenger compartment of an automobile and any containers therein without a warrant or probable cause when such a search is incident to a lawful arrest. See New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Taylor, 857 F.2d 210, 214 (4th Cir.1988). The validity of the arrest in this case is undisputed. The testimony of Officer McDonald, who arrested Cox, establishes that Cox was arrested and then placed in the police cruiser. This point was reinforced by way of clarification at the suppression hearing.
 
 
 11
 Because a warrantless search incident to a lawful arrest is constitutionally permissible and since the search in this case was conducted in the course of a valid arrest, the district court did not err in denying Cox's motion to suppress the evidence seized as a result of the search of Cox's car.
 
 
 12
 II. The later search of the trunk of the automobile.
 
 
 13
 Cox also contends that the warrantless search of the trunk, where the firearm was found, was improper. Specifically, he argues that although inventory searches may constitute an exception to the requirement of a search warrant, the exception requires that the vehicle must be in the lawful possession of the police. Cox asserts that the prerequisite of lawful possession was lacking in this case because the police were required to attempt other forms of removing the automobile from the site of the investigatory stop. Namely, he contends that they were required to request Cox to make arrangements for the car's removal; allow a licensed driver designated by him or the owner to remove the vehicle; and finally, only if those options failed, remove the vehicle from the roadway.
 
 
 14
 There is no dispute that routine inventories of vehicles are permitted without a warrant so long as the vehicle is in the lawful custody of the police and the inventory is conducted pursuant to standard procedures designed to secure the car and its contents, not to gather incriminating evidence against its owner. See South Dakota v. Opperman, 428 U.S. 364 (1976); United States v. Brown, 787 F.2d 929 (4th Cir.), cert. denied, 479 U.S. 837 (1986). An officer's suspicion that contraband may be present does not invalidate an otherwise lawful inventory search. United States v. Feldman, 788 F.2d 544, 549-53 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 15
 Cox's argument regarding the alternatives to impoundment is misplaced. The police regulations provide for the removal of automobiles where the license plates are altered and ownership of the vehicle is in question. Specifically, they state that if "ownership is in question, the vehicle shall be impounded." Nowhere do the regulations require the officer to attempt to make other arrangements for its removal.
 
 
 16
 Furthermore, it is clear from the record that the officers were conducting the inventory of the vehicle for purposes of accountability and safekeeping. Even if they had been searching for contraband, a warrant would most likely have been unnecessary since there was ample evidence supporting probable cause. The officers had already found heroin and drug paraphernalia in the passenger compartment. They had also been misled as to whether defendant possessed a key to the trunk. See United States v. Chavis, 880 F.2d 788 (4th Cir.1989) (passage of time between arrest and search does not invalidate the finding of probable cause for conducting warrantless search).
 
 
 17
 III. District court's refusal to hold evidentiary hearing on suppression motion.
 
 
 18
 Cox asserts that the refusal of the trial court to hold an evidentiary hearing amounted to an abuse of discretion, since there were factual issues in need of resolution before the court could determine whether the search of the car was constitutionally permissible.
 
 
 19
 We note that Cox made no request for an evidentiary hearing. However, even if he had, he would not have been entitled to one as a matter of right. Rather, he would have had the burden of showing the existence of disputed material facts. Nechy v. United States, 665 F.2d 775, 776 (7th Cir.1981). To carry this burden, he would have needed to show specifically and with detail that "contested issues of fact going to the validity of the search [were] in question." United States v. Ledesma, 499 F.2d 36, 39 (9th Cir.), cert. denied, 419 U.S. 1024 (1974).
 
 
 20
 Cox did not meet this burden. His motion to suppress merely asked the court to "suppress all evidence obtained pursuant to any and all searches on or about June 10, 1990." Moreover, at the suppression hearing, when asked whether he agreed with the government's detailed statement of the facts, counsel for defendant asked to clarify the issue of Cox's location at the time the officers radioed for information regarding Cox's license and ownership of the car. After a response by the government, defense counsel stated that the defense was in agreement with the facts as presented. Additionally, at the end of the suppression hearing, the government made a proffer of the park police's general order covering the impoundment and inventorying of vehicles. No objection was made to this proffer.
 
 
 21
 Finally, the district court stated for the record that "there really isn't any dispute in the facts of the case." Again, no objection was made. It cannot be said that the district court abused its discretion, in light of the proceedings, in not holding a full evidentiary hearing.
 
 
 22
 IV. District court's failure to suppress evidence obtained in alleged violation of appellant's Miranda* rights.
 
 
 23
 Cox claims that he was in custody and handcuffed in the rear seat of the police car when, without reading him his rights, the police officer asked Cox if he was a heroin user. He claims that the questions were "reasonably likely to elicit an incriminating response from appellant."
 
 
 24
 This issue was not preserved for review. Cox never mentioned the alleged Miranda violation at the suppression hearing. He also failed to object when the officer testified at trial about Cox's answer to the question of his heroin use. Therefore, this is the first time the issue has been raised and should be dismissed on this ground alone.
 
 
 25
 Moreover, police officers need not give Miranda warnings where questions could reasonably be said to have been prompted by concern for "public safety." New York v. Quarles, 467 U.S. 649 (1984) ("public safety" exception to Miranda justified officer's failure to advise handcuffed suspect of rights before questioning him in public place, where he had just been taken into custody, as to location of gun of which officer had been informed). Once the officers discovered the drug paraphernalia, it was reasonable for them to inquire about Cox's drug use since drug users often act irrationally. One of the officers stated at trial that he posed the question to Cox "for my own concern and safety."
 
 
 26
 Even if there was a Miranda violation, the admission into evidence of the question and Cox's response was harmless error. See United States v. Ramirez, 710 F.2d 535, 542-543 (9th Cir.1983) (harmless error analysis applicable to admission of evidence obtained in violation of Miranda ). The evidence against Cox was overwhelming. Moreover, the prejudicial effect of the admission of Cox's statement that he was a heroin user cannot be said to outweigh the "probative value of the properly admitted evidence." Williams v. Zahradnick, 632 F.2d 353, 361 (4th Cir.1980) (case-by-case weighing of factors in harmless error inquiry). The paraphernalia found in the car sufficiently and independently supports Cox's conviction.
 
 
 27
 V. Sentencing of defendant under 18 U.S.C. § 924(e).
 
 
 28
 Cox objects to the sentence imposed by the district court on the firearm charge pursuant to 18 U.S.C. § 924(e)(1) (requiring imprisonment of at least fifteen years for possession of a firearm in violation of 18 U.S.C. § 922 where defendant previously convicted of three violent crimes). His argument that these provisions do not apply since they have been superseded by the federal sentencing guidelines is without merit.
 
 
 29
 The guidelines are explicit in stating that statutory requirements prevail over guideline ranges where the statutorily required minimum is greater than the maximum of the applicable guidelines range. U.S.S.G. § 5G1.1(b); see United States v. Crittendon, 883 F.2d 326 (4th Cir.1989). The maximum guidelines range in this case is fiftyseven months, well under the statutory minimum of fifteen years. 18 U.S.C. §§ 922(g), 924(e)(1). Therefore, we affirm the sentence as imposed by the district court.
 
 
 30
 VI. Conclusion.
 
 
 31
 For the foregoing reasons, we affirm the judgment of the district court. We dispense with oral argument because the dispositive issues have recently been authoritatively decided and the decisional process would not be significantly aided by oral argument.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Miranda v. Arizona, 384 U.S. 436 (1966)