996 F.2d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Earl BESSENT, Defendant-Appellant.
 No. 92-5741.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: June 7, 1993.
Decided: July 1, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence.
 James Earl Bessent, Appellant Pro Se.
 William Earl Day, II, Assistant United States Attorney, for Appellee.
 D.S.C.
 AFFIRMED.
 Before HALL, MURNAGHAN, and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 James Earl Bessent was convicted by a jury of conspiracy to counterfeit United States obligations, 18 U.S.C. § 371 (1988), making counterfeit United States obligations, 18 U.S.C.s 471 (1988), and dealing in counterfeit United States obligations, 18 U.S.C. § 473 (1988). Following his conviction, he moved for a new trial on the ground of newly discovered evidence under Rule 33, Federal Rules of Criminal Procedure. His motion was denied by the district court. Proceeding pro se, Bessent appeals his conviction and the denial of his motion for a new trial. He has also moved for release on bond pending appeal. We affirm the district court in all respects, and deny the request for release pending appeal.
 
 
 2
 Bessent was one of four defendants charged in the indictment. Bessent went to trial with Randy Lucia, with whom he lived and ran a print shop in Mullins, South Carolina. Terry Hughes, Bessent's nephew, and Jasper Falk, a friend of Hughes, entered guilty pleas and testified against Bessent and Lucia. According to Hughes, Bessent gave him $3000 in counterfeit $10 bills in January 1991. Hughes gave some to Falk, who used the fake money in South Carolina and in North Carolina. When the Secret Service traced the bills to Falk, he agreed to cooperate and introduced Agent Willis Johnson to Hughes as an old friend interested in buying counterfeit money.
 
 
 3
 Hughes told Johnson that his uncle, Bessent, and Lucia were the printers. Johnson met with them and, in a recorded conversation on March 20, 1991, they acknowledged making the counterfeit $10 bills and agreed to print one and a half million dollars in counterfeit $50 bills for $20,000. The $50's were to be ready on April 3, 1991, and were to be of better quality than the $10 bills. In a second recorded conversation on April 3, Lucia told Johnson that he and Bessent had decided not to do it. However, Hughes testified that Bessent and Lucia were uneasy about Johnson and unwilling to deal with him, and had decided to make the $50's for themselves and Hughes.
 
 
 4
 At this point, the Secret Service approached Hughes, who also agreed to cooperate. He subsequently traveled with Bessent to Myrtle Beach where Bessent made inquiries at a paper supply store about heavyweight paper and green check paper and learned of a distributor for the latter. Not long afterward, Hughes advised agents that Bessent and Lucia were expecting delivery of paper for counterfeiting the $50 bills. However, search of the print shop, their house, and Bessent's car revealed no contraband.
 
 
 5
 On the morning of the trial, the government attorney informed the court and the defendants that Bessent's sister, Kathryn Strickland, had just been subpoenaed because of information learned the night before from Hughes. She testified that in February or March 1991 Bessent had shown her some counterfeit $10 bills and stated he had about $4000 in counterfeit money and had spent some of it in North Carolina. She said that after he was charged, he asked her to tell his attorney that the money had been acquired by Hughes in a drug deal. She did call Bessent's attorney; however, she told him she did not want to be involved.
 
 
 6
 Testifying in his own behalf, Bessent said he refused Hughes's request that he and Lucia print counterfeit money, but "played along" during the recorded meeting with Agent Johnson as Hughes asked him to do because Hughes hoped to borrow money from Johnson. He said Strickland told him Hughes had $6000 in counterfeit money from a drug deal which she was reluctant to testify about because Hughes was her nephew. He said he had decided not to call Strickland as a witness himself because she owed him money and people might think he had paid her to testify for him.
 
 
 7
 Bessent argues on appeal that reversal of his conviction is required for a variety of reasons. None are meritorious. He alleges error in the admission of each of the government's exhibits and in use of transcripts as aids with the tapes of the recorded conversations. Because his attorney did not object below, we review these claims only for plain error. United States v. Davis, 954 F.2d 182 (4th Cir. 1992). We find no error in the admission of the tapes which had been filtered to lessen the background noise in the print shop. United States v. Carbone, 798 F.2d 21, 24-25 (1st Cir. 1986). The record does not disclose that the tapes were inaudible. The agent authenticated the tapes and verified their accuracy and the accuracy of the transcripts. The use of transcripts is within the discretion of the district court, United States v. Collazo, 732 F.2d 1200, 1203 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985), and we perceive no abuse of discretion in the court's decision to use the transcripts, or in its admission of the government's other items of evidence.
 
 
 8
 Bessent also contends that his defense was prejudiced when the district court allowed Kathryn Strickland to testify without giving him prior notice in that he was denied an opportunity to obtain witnesses to discredit her testimony. However, the government notified him as soon as it became aware of Strickland's information and subpoenaed her. There was no violation of discovery procedures because she had made no prior statement. Her testimony came on the first day of a two-day trial. Bessent did not ask for a continuance to obtain further witnesses, but contradicted her in his own testimony. We perceive no unfair prejudice to Bessent's defense. Our review of the trial record discloses that Bessent's other claims of prosecutorial misconduct or error on the part of the district court are similarly without merit.
 
 
 9
 After his conviction, Bessent moved for a new trial on the ground of newly discovered evidence. This consisted of affidavits from family members and a friend who asserted variously that Hughes had offered several times to pay for help in setting Bessent up because of ill will over the shooting of another family member by Lucia some years before, as well as that Strickland was being paid by Hughes to testify against Bessent, and had previously said she would "hang him" after Bessent refused to give her money. He asserted that this information had not been available before trial.
 
 
 10
 A new trial may be granted on the basis of newly discovered evidence if: (1) the evidence is, in fact, newly discovered; (2) the movant has exercised due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in an acquittal at the new trial. All five requirements must be met. United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). After a hearing on Bessent's motion, the district court held that his evidence was merely impeaching, and would not probably result in an acquittal on retrial. The government's case rested primarily on the testimony of Agent Johnson and evidence of the recorded conversations, which was corroborated not only by Hughes's testimony but also by that of Jasper Falk, who was unrelated to Bessent.* For this reason, and also because it is questionable whether due diligence was exercised by Bessent to discover the information before trial, the motion was properly denied.
 
 
 11
 We therefore affirm the conviction and the denial of the motion for new trial. Because Bessent's appeal does not present a substantial question of law or fact, we deny his motion for release pending appeal. 18 U.S.C.A. § 3143 (West 1985 & Supp. 1992). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 We also agree with the district court's observation that Bessent was motivated to avoid exploring Strickland's alleged bias arising from the fact that Lucia had killed Bessent's brother earlier